# DISTRICT OF COLUMBIA v. TYRRELL.*

---

MUNICIPAL CORPORATIONS; DISTRICT OF COLUMBIA; NEGLIGENCE; BOARD
    OF EDUCATION: GOVERNMENTAL FUNCTIONS; NUISANCE.

1. The District of Columbia is a municipal corporation although its
    organization is peculiar, there being no general organic law covering

---

> *Municipal Corporations—Negligence.*—Upon the question of the liability of municipal corporations for negligence in performance of public func-

all of the ordinary powers usually conferred in the creation of a municipal corporation— no formal charter.

2. The public schools which the act of Congress of June 20, 1906 (34 Stat. at L. 316, chap. 3446), places under the control of a board of education of the District of Columbia to be appointed by the supreme court of the District, form a branch of the District organization irrespective, it seems, of the method of choosing the board; and if the board be guilty of negligence or misconduct which will sustain an action by a person thereby damaged, the action will lie against the District.

3. Municipal corporations in general are invested with two kinds of special power, and charged with two kinds of duties; one is of that kind which arises from the grant of a special power, in the exercise of which the municipality is as a legal individual; the other is of that kind which arises or is implied from the use of political rights under the general law in the exercise of which it is a sovereign. The former is not held by the municipality as one of the political divisions of the State, and the latter is. (Citing *Brown* v. *District of Columbia*, 29 App. D. C. 273, 25 L.R.A.(N.S.) 98.)

4. The maintenance of schools being a governmental function, the neglect of the District of Columbia to fix a leaking gas pipe in a school building, of which it had notice, does not render it liable for personal injuries caused by the explosion of the gas, upon the theory that the condition constituted an actionable nuisance. (Citing *Brown* v. *District of Columbia*, *supra*, and distinguishing *Roth* v. *District of Columbia*, 16 App. D. C. 323, Mr. Justice Robb dissenting.)

No. 2600.    Submitted January 8, 1914.    Decided February 2, 1914.

HEARING on an appeal by the defendant from a judgment of the Supreme Court of the District of Columbia, on verdict, in an action brought to recover damages for injuries resulting in the death of plaintiff's intestate.    *Reversed.*

tion, see notes to *Barron* v. *Detroit*, 19 L.R.A. 452, and *Dickinson* v. *Boston*, 1 L.R.A.(N.S.) 665, for the distinction between public and private functions of municipal corporations in respect to liability for negligence; as to liability for death caused by negligence in the performance of a governmental function, see note to *Smith* v. *Sewerage Comrs.* 38 L.R.A. (N.S.) 151; as to liability of municipal corporation for tort in connection with buildings used by defendant, see note to *Columbus Finance & T. Co.* v. *Louisville*, 25 L.R.A.(N.S.) 88.

The COURT in the opinion stated the facts as follows:

This is an appeal by the District of Columbia from a judgment recovered by Susie A. Tyrrell, the appellee, who, as plaintiff below, brought the action to recover damages of the defendant for injuries resulting in the death of Conrad E. Tyrrell, whose administratrix she is. Intestate died leaving a widow (the plaintiff) and an infant son four years of age.

The declaration alleges that the defendant was seised and possessed of a certain lot in the city of Washington on which it had a building known as the McKinley Manual Training School. That in December, 1910, defendant contracted with Gormley & Poynton to construct an addition to the said school building. That, with the approval of the defendant, said contractors sublet to one Forsberg a certain portion of the work, which consisted of the installation of certain breeching and a smokebox over a furnace and boilers in the basement of the old building. That prior to said work of repair and at the time thereof the building, as defendant well knew, was supplied with illuminating gas, for the service of which defendant paid the Washington Gas Light Company. That said gas was highly inflammable, and was conveyed through pipes from a gas meter located in the basement of the building. That it was the duty of defendant to maintain the gas pipes in such manner as to prevent injury to persons lawfully in said building. That on September 1st and 2d, 1911, defendant had due notice that the gas pipes were in bad repair, and that gas was escaping into the basement and other parts of said building. That defendant, disregarding said notice, wrongfully and negligently permitted said pipes to remain in said dangerous condition, and failed to have the same examined and repaired, and to stop the escape of gas. That on September 2, 1911, plaintiff's intestate was engaged in working in said basement for said Forsberg; and without any negligence on his part there occurred an explosion, as a direct result of defendant's negligence, by reason of which plaintiff's intestate received injuries which caused his death.

Defendant pleaded the general issue, and a special plea of release as follows:

"And for a further plea to each and every court of said declaration, the defendant, by leave of court, says that the plaintiff, as administratrix of above-named intestate, on, to wit, January 17, 1912, pursuant to an order of this court, executed a release for a valuable consideration and under seal, to Philip F. Gormley and Arthur M. Poynton, who were the contractors with defendant, as alleged in the declaration, and to G. W. Forsberg, named in said declaration, and to certain others named in said release, whereby plaintiff released and forever discharged said persons of and from any and all claims, demands, suits, actions, and causes of action whatsoever which the plaintiff, as administratrix aforesaid, had or might have against any or all of said parties by reason of the death caused by accident or otherwise of plaintiff's intestate, Conrad E. Tyrrell, while employed at, in, and about work at the McKinley Manual Training School, located at Seventh street and Rhode Island avenue, N. W., Washington, D. C., which death was the result of an accident occurring at said McKinley Manual Training School on or about the 2d day of September, A. D. 1911."

Plaintiff demurred to the special plea, and the same was stricken out, to which defendant excepted.

Testimony tended to show that the title to the school premises was in the defendant. That on December 23, 1910, defendant, in accordance with an appropriation by Congress and the directions of the same, entered into a written contract with Gormley-Poynton Company to build the annex to the building and also to install new steam boilers, smoke breeching, stack and box, etc., in the old building. The contract provided that the contractor should employ capable and skilled superintendents, foremen, and mechanics, who should obey orders from the engineer commissioner. That inspectors may be appointed who shall at all times have access to all parts of the work, and whose duty it shall be to point out to the contractors any neg-

lect or disregard of the specifications of the contract. That the contractor shall be responsible for the care of the building and materials, and for all damage that may accrue to the same as well as to persons employed in said building. The contract was performed as required by law under the general supervision of the municipal architect, and one German was the inspector in immediate charge. The latter was there daily inspecting the work of the contractor. The Evans-Almoral Company subcontracted for the work in the furnace room, and let the same to Forsberg. Forsberg testified that he was engaged in installing the boilers and the smoke breeching. The breeching came off the top of the boilers close to the ceiling and into the smokestack. Had nothing to do with gas pipes. Was usually in the room once a day, and would go on to the top of the boilers where Tyrrell was working. Never smelled the odor of gas. There were some pipes within 6 inches of where the work was going on. Did not know what kind of pipes. There was testimony that Tyrrell had been in the employ of Forsberg, off and on, for five years, and received $2.50 per day with allowance for extra work. Tyrrell was foreman. Datcher, Green, and Moore were his helpers. Moore testified that on Saturday, September 2, 1911, he and the others were at work in the building. Witness was downstairs holding a sheet of iron. Tyrrell called Datcher to bring him a match. Neither Datcher nor witness had a match. He said, "Bring me a piece of paper." Witness twisted a piece of paper and gave it to him. Tyrrell said the superintendent told him to look for a leak in the gas pipe. An explosion followed and the whole thing toppled down on him. Pulled him out. Spoke to him about the escaping gas on Thursday. Told him at lunch time if he did not say something about the gas he would not be able to stay there until 4 o'clock. We worked all day Friday. Escape of gas was severe on Friday. It was about 12:30 when Tyrrell came to look for the leak. He was lying on his stomach on the breeching, and there was a space between the boilers where he tried to find the leak. All could smell gas plainly in the boiler room; was very strong on Saturday. When we worked the first week there was no smell

of gas. Pipes were exposed about 3 feet from where Tyrrell was working. Commenced work again on Wednesday before the accident, and then smelled gas.

Datcher, another witness for plaintiff, told Inspector German on Friday that the gas was escaping badly and he could not work there. Spoke to him again on Saturday. He made no answer either time. On Saturday at 12 :30 Tyrrell said : "You and Green stay down here and finish punching the holes in the iron, and Moore, you come up here with me." He and Moore went up the ladder onto the boilers. He came back and called for a match. There was no match, and he called for a piece of paper. Moore went up the ladder and handed him the paper, and Tyrrell went to work again. Had a lantern in his hand. Shortly after the explosion occurred. It was dark on top of the boilers where Tyrrell worked, but light below in the room. The odor of gas was more perceptible up above where Tyrrell was working.

The principal of the school testified for plaintiff. It was the vacation season. Noticed the smell of gas in the assembly room over the place where the explosion occurred. This was about the last week in August. Asked the janitor to locate the leak if he could. Mentioned it to Mr. Chamberlain, who is supervisor of manual training in the public schools. They and the janitor tried to locate the leak, but failed. Janitor continued to hunt the leak, but witness did not. The gas used in the building was for laboratory use; not for lighting.

Chamberlain testified that he had been supervisor of manual training for twenty years, with office in the Franklin Building. Had occasion, sometimes daily and sometimes three times a week, to visit the McKinley School, having "a sort of supervisory work in the construction of the building for the board of education." Saw German there on his visits. Was in the building about an hour before the explosion, and noticed the odor of gas. Could not tell where it came from; was strongest in the assembly hall. Maddox, the janitor of the school building had held his position about twelve years, and testified that on Thursday before the explosion, the principal called wit-

ness's attention to the odor of gas; went into the assembly hall to see if it could be found; could not find the leak. Spoke to German of it. He made no reply. Told Gormley of the leak about the same time. Made no report other than to tell German, because it was contract work. He makes his reports to the principal, who makes them to the board, and they notify the repair shop, and the repair shop sends someone to fix the leak. It was conceded that the gas in the building is used for public purposes and the bills therefor paid by the District of Columbia.

Hechinger, witness for plaintiff, was engineer and assistant superintendent for Gormley-Poynton Company. Remembers going through the building with German, looking for the gas; cannot say how long before. Think we smelled gas in the assembly room; do not remember about the boiler room.

An expert actuary testified that the expectation of a man twenty-seven years old in good health, would be 37.4 years. He also testified that the expectation of a woman twenty-three years old would be 48.7 years; and of a child of four nearly fifty years. Defendant objected to the evidence of the expectation of life of the woman and child, and excepted when overruled. The testimony relating to Tyrrell's wounds and death is omitted.

For defendant, German testified by deposition, that he was inspector of buildings under the municipal architect and was so employed in the McKinley School. A gas leak was reported to witness by the janitor. After attempting to locate it, without success, asked Tyrrell if he detected the odor of gas among the piping overhead where he worked. Said he did not. Cautioned him not to proceed until the leak had been discovered. Also reported it to Gormley and the contractor's superintendent. When the explosion occurred was on the way to tell the janitor to turn the gas off. Told Tyrrell I was going to have it turned off. Odor was noticeable in assembly room on Friday; helped the janitor to locate the source, thinking it was in that room. Made no effort to locate it in the boiler room other than to ask Tyrrell if he could discover any odor along the piping or conduits. This was on Saturday just preceding the accident.

Some other testimony of no material consequence was introduced by defendant. The following recital concluded defendant's case:

"With your Honor's permission, I want to make a formal offer of proof under the general issue of the facts set out in this plea which your Honor has declined to admit, and of the fact that the plaintiff in this case, as the record already shows, is administratrix, and that she made this settlement, and that there was an order of court passed in that administration cause authorizing her to compromise and settle that claim for the death of her husband with these individuals.

"Counsel for the defendant, the District of Columbia, did not exhibit to the court or to counsel for the plaintiff any paper writing of any kind purporting to constitute a release by the plaintiff in this case, either in support of his proffer, or otherwise.

"The court having sustained a demurrer to the second plea of defendant filed in the case, thereupon sustained an objection by plaintiff to the proffer as announced by counsel for the defendant, to which ruling counsel for the defendant noted an exception and the same was noted on the minutes of the court."

Many special instructions asked by the defendant were refused, and defendant excepted. Several of these directed a verdict because of the absence of sufficient legal evidence; because of the contributory negligence of the plaintiff's intestate; because in the erection or alteration of a school building defendant was exercising a governmental function; and because the plaintiff's intestate was in the employ of an independent contractor. The last instruction asked was to the effect that as matter of law the facts proved did not constitute a nuisance.

The court then charged the jury that for an isolated act of negligence the defendant would not be responsible. If responsible at all it is upon the theory that the defendant maintained a nuisance from which the injury and death resulted. The public has the right that the air shall not be rendered impure by

noxious gases; that the safety of the public shall not be endangered by the putting abroad of any substance which in itself is a menace to the public safety. The significance of the term "nuisance" lies in the consideration that nothing can be a nuisance unless it produces continuity in the violation of the right of the public. That the jury must determine from all the facts and conditions of locality whether there was such continuity of the escape of gas as amounted to a nuisance, and whether the defendant is responsible for such nuisance. Illuminating gas is a dangerous substance, and it is a rule of law that whoever is in control of a dangerous substance is under a certain duty to keep it in control, and not permit it to escape. The measure of duty of the custodian or user of such dangerous substance is the care to control and confine it that one of reasonable caution and prudence would use under the circumstances. The charge on this point concludes as follows:

"Therefore, if you find that there was a nuisance in this case, and you find that the District of Columbia did not use that degree of care that a man of reasonable care and prudence would have used under the same circumstances to keep this gas in the gas pipe, then the District of Columbia would be responsible for the maintenance of the nuisance. But in no other aspect of the case is it possible for a recovery to be properly had against the District of Columbia."

Defendant excepted to the charge relating to nuisance and its liability therefor.

Mr. C. H. Syme, Corporation Counsel, and Mr. Roger J. Whiteford, Assistant, for the appellant.

Mr. Alexander Wolf and Mr. Levi H. David for the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

The District of Columbia is undoubtedly a municipal cor-

poration, though its organization is peculiar.   There is no general organic law covering all of the ordinary powers usually conferred in the creation of a municipal corporation,—no formal municipal charter, so to speak.   The commissioners are ministerial officers.   Congress exercises general control, sometimes enacting laws relating to municipal powers, duties, and regulations; sometimes delegating to the commissioners the power to enact police regulations respecting specified subjects. The commissioners have no power to raise revenues for the support of the municipality, and the sums appropriated by Congress are directed to be applied to certain specified purposes, whether it be the improvement of streets, erection of public buildings, including public schoolhouses and their repair. *Brown v. District of Columbia,* 29 App. D. C. 273, 282, 25 L.R.A. (N.S.) 98.   The management and control of the public schools were formerly vested in the commissioners, and the title to the premises had been vested in the District of Columbia.   The act of Congress, approved June 20, 1906 (34 Stat. at L. 316, chap. 3446), undertakes to provide for the system of education, under a new arrangement.   It vests control of the public schools in a board of education, to be appointed by the supreme court of the District; which board shall determine all questions of public policy relating to the public schools, appoint the executive officers, define their duties, and direct expenditures.   It shall also make an estimate in detail for the amount of money required for the schools for the coming year, and the commissioners shall transmit the same in their annual estimate of appropriations for the District.   The public schools form a branch of the municipal organization, and it would seem to be immaterial how the board of education, charged with their administration and control, are chosen or appointed.   *Barnes v. District of Columbia,* 91 U. S. 540, 545, 23 L. ed. 440, 441; *District of Columbia* v. *Woodbury,* 136 U. S. 450, 453, 34 L. ed. 472, 473, 10 Sup. Ct. Rep. 990.

If, through the negligence or misconduct of the board of education, an injury is done to person or property for which an action would lie in a particular case, that action would lie

against the District of Columbia as a municipal corporation. This brings us to the question whether this action can be maintained against the District of Columbia for the consequences of the negligence or misconduct of its agents, as charged.

The court, as recited above, charged the jury that the defendant was not responsible for a mere act of negligence. This, we think, declares a sound principle of law. "Municipal corporations in general are invested with two kinds of special powers, and charged with two kinds of duties; the one kind is private, that is to say, merely municipal and for special local purposes and benefits; the other of a political or governmental character, for the general public welfare. 2 Dill. Mun. Corp. sec. 966. In the language of Folger, J.: 'One is of that kind which arises from the grant of a special power, in the exercise of which the municipality is as a legal individual; the other is of that kind which arises or is implied from the use of political rights under the general law, in the exercise of which it is as a sovereign. * * * The former is not held by the municipality as one of the political divisions of the State; the latter is.' *Maximilian* v. *New York,* 62 N. Y. 160, 164, 20 Am. Rep. 468; *Brown* v. *District of Columbia, supra."*

Whatever the conflict of decisions upon the question of the liability of a municipal corporation for defects in the public streets, that liability has been affirmed in this jurisdiction. *Barnes* v. *District of Columbia,* 91 U. S. 540, 23 L. ed. 440; *District of Columbia* v. *Woodbury,* 136 U. S. 450, 34 L. ed. 472, 10 Sup. Ct. Rep. 990.

The ground of liability is thus stated in *Weightman* v. *Washington,* 1 Black, 39, 50, 17 L. ed. 52, 57: "Where such a duty of general interest is enjoined, and it appears, from a view of the several provisions of the charter, that the burden was imposed in consideration of the privileges granted and accepted, and the means to perform the duty are placed at the disposal of the corporation, or are within their control, they are clearly liable to the public if they unreasonably neglect to comply with the requirement of the charter." The duty was a ministerial one.

The Supreme Court of the United States has gone no further than this.

In no case has it declared liability for failure to perform a purely governmental duty. See *Johnston* v. *District of Columbia,* 118 U. S. 19, 21, 30 L. ed. 75, 76, 6 Sup. Ct. Rep. 923; *Brown* v. *District of Columbia, supra.* In the latter case the District was held not to be liable for a defective condition of a house of the fire department through which plaintiff was injured. The duty of maintaining a system of public education for the benefit of all persons residing in the District of Columbia is a purely governmental function which is exercised by act of Congress through a board of education established thereby, though using school buildings the title to which had been acquired by the District of Columbia at a time when the system was under the management of the district commissioners by direction of Congress. "The duty of providing means of education, at the public expense, by building and maintaining schoolhouses, employing teachers, etc., is a purely public duty, in the discharge of which the local body, as the state's representative, is exempt from corporate liability, for the faulty construction or want of repair of its school buildings, or the torts of its servants employed therein." 2 Shearm. & Redf. Neg. 6th ed. sec. 267.

The foregoing proposition has the support of the great weight of authority. See 4 Dill. Mun. Corp. sec. 1657, and notes; *Hill* v. *Boston,* 122 Mass. 344, 353 *et seq.,* 23 Am. Rep. 332; *Folk* v. *Milwaukee,* 108 Wis. 359, 84 N. W. 420, 9 Am. Neg. Rep. 207; *Kinnare* v. *Chicago,* 171 Ill. 332, 49 N. E. 536.

The apparent purpose of the declaration was to claim damages for defects in the gas pipes of the school building and the neglect of the duty to repair the same after notice; but it may be assumed that it furnished a foundation for the recovery of damages caused by a nuisance maintained by the defendant.

Upon this assumption the court charged the jury that if the gas had been permitted to escape in the building long enough to constitute a continuing nuisance; and that if the defendant did not exercise the care than a man of reasonable prudence and

care would have exercised under the same circumstances, it would be responsible for the maintenance of the nuisance.

That the District of Columbia may be held liable for the commission of a nuisance working injury directly to the occupant of adjacent property has been affirmed by this court. *Roth* v. *District of Columbia,* 16 App. D. C. 323, 327. In that case a stable in which were kept the horses used for ambulances by the District police was kept in such filthy condition that it produced flies and vermin and noxious odors, which impaired the health and comfort of plaintiff, who lived on the adjoining lot. It was held that while "the mere maintenance or location of an ambulance stable, although possibly annoying and inconvenient to the residents of a neighborhood, may not of itself be held to be a nuisance, since it is a necessary and proper appliance of governmental authority, but the negligent, improper, and unlawful manner of its maintenance, which is the thing of which complaint is here made, is not warranted by any requirement of governmental duty, and is, on the contrary, directly antagonistic to the demands of such duty." And it was further said: "It would be strange indeed if the question of the liability of a municipality for a nuisance committed or permitted by it upon its own property to the detriment of the neighborhood were dependent upon the amount of gain derived from the existence of the nuisance. As we have said, the municipality is not in the performance of any public duty, but rather in the violation of its public duties, when it permits the maintenance of a nuisance upon its property."

This conclusion is supported by many cases. See *Hill* v. *Boston*, 122 Mass. 344, 358, 23 Am. Rep. 332, where the cases are cited. In that case the court held that the city was not liable for an injury to a school child through the unsafe condition of the school building. The cases cited, as referred to above, are by the same court. After stating their doctrines, Mr. Chief Justice Gray said: "But in such cases, the cause of action is not neglect in the performance of a corporate duty, rendering a public work unfit for the purposes for which it is intended, but it is the doing of a wrongful act, causing a direct injury to

the property of another, outside of the limits of the public work."

In the instant case there was no wrongful act as a result of which the gas was permitted to escape and become a nuisance to the public outside of the building, working discomfort or danger of itself.

It might be inferred from the evidence of the assistants of plaintiff's intestate that, failing to obtain the match that he asked for, he lighted the twisted paper with the light contained in his lantern, and in searching for the leak ignited the gas where confined in some of the recesses of the ceiling in quantity sufficient to produce the explosion that caused his death.

Be that as it may, his death was not the result of a nuisance for which the defendant could be held liable.

Instead of being governed, therefore, by *Roth* v. *District of Columbia, supra,* and the Massachusetts nuisance cases referred to above, the case comes more nearly within the rule of *Brown* v. *District of Columbia; Hill* v. *Boston,* and others, *supra.* In one of those cases (*Folk* v. *Milwaukee,* 108 Wis. 359, 84 N. W. 420, 9 Am. Neg. Rep. 207) the action was for the death of a pupil caused by the escape of sewer gas in a school building.

We are of the opinion that the court should have directed a verdict for the defendant.

This conclusion renders it unnecessary to consider the assignments of error relating to the effect of the work as carried on by an independent contractor; to contributory negligence; and to the effect of the release of the principal and subcontractors as pleaded.

The judgment is reversed, with costs, and the cause remanded for a new trial, not inconsistent with this opinion.

*Reversed.*

Mr. Justice ROBB dissenting.