Charles B. ELGIN, Sr., Individually and as Next Friend of John Elgin, a Minor, Appellant,

v.

DISTRICT OF COLUMBIA, Appellee.

No. 18238.

United States Court of Appeals District of Columbia Circuit.

Argued May 18, 1964.

Decided Aug. 20, 1964.

Mr. James R. Treese, Washington, D. C., with whom Messrs. Thomas S. Jackson, Robert M. Gray, and John L. Laskey, Washington, D. C., were on the brief, for appellant.

Mr. John R. Hess, Asst. Corp. Counsel for the District of Columbia, with whom Messrs. Chester H. Gray, Corp. Counsel, Milton D. Korman, Principal Asst. Corp. Counsel, and Hubert B. Pair, Asst. Corp. Counsel, were on the brief, for appellee.

Before BAZELON, Chief Judge, and BASTIAN and McGOWAN, Circuit Judges.

McGOWAN, Circuit Judge.

In this litigation, liability in tort is claimed to have accrued by reason of an accident which occurred while John Elgin, a minor and a full-time student at a public school owned and operated by the District of Columbia, was engaged in a required recreation program on the school playground. He fell into a depressed areaway immediately adjacent to the playground, which areaway itself surrounded the basement of the school building. The complaint, in one count, alleged that the fall was the result of the District's negligence in failing either to provide, or to maintain properly, an adequate railing or other safeguard around the depressed areaway or to warn of the resultingly dangerous condition, or in exposing Elgin to this dangerous condition through mandatory participation in activities likely to result in injury because of it. A second count in the complaint, relying upon the same factual allegations, sets forth a claim of nuisance. The District Court, upon motion prior to trial, dismissed the complaint, presumably upon the ground that the doctrine of municipal immunity precluded recovery.[1] This appeal seeks, through reversal of that action, an opportunity to prove the allegations of the complaint at a trial.

Three points are urged upon us as warranting such reversal. One is a plea that we join the growing number of courts which have put an end to the shelter from tort liability afforded to municipal governments by the immunity doctrine. For the reasons set forth in the margin, we do not deal with the merits of this proposal.[2] A second is an argument that, whatever the vulnerability of the negligence count in the complaint, the second count, stated in terms of nuisance, is

---

1. Although the order of dismissal does not recite the ground, the motion was bottomed upon the immunity doctrine, and the memoranda of points and authorities filed by the parties were addressed to it, with special reference to the question of "governmental," as opposed to "proprietary," functions. The learned trial judge had earlier expressed his view generally to be that "[g]overnment immunity from suit is an obsolescent and dying doctrine"; and he had characterized the efforts of the courts to differentiate between governmental and proprietary functions as "far from clear and * * * not always consistent throughout," concluding that "[i]t is obviously difficult to chart a definite course or to deduce a governing principle from this welter of decisions." Calomeris v. District of Columbia, 125 F.Supp. 266, 267–268 (D.D.C.1954), aff'd, 96 U.S.App.D.C. 364, 226 F.2d 266 (1955).

2. As recently as last year (and see Harbin v. District of Columbia, 119 U.S.App. D.C. ——, 336 F.2d 950, decided July 3, 1964), this court reaffirmed a position it had taken earlier, namely, that termination of municipal tort immunity is, insofar as the District of Columbia is concerned, a question to be resolved at the legislative level by the Congress of the United States. Urow v. District of Columbia, 114 U.S.App.D.C. 350, 316 F.2d 351, petition for rehearing en banc denied April 16, 1963, cert. denied, 375 U.S. 826, 84 S.Ct. 69, 11 L.Ed.2d 59 (1963). Accord, Capital Transit Co. v. District of Columbia, 96 U.S.App.D.C. 199, 225 F. 2d 38 (1955); Calomeris v. District of Columbia, 96 U.S.App.D.C. 364, 226 F. 2d 266 (1955); Wilson v. District of Columbia, 86 U.S.App.D.C. 28, 179 F.2d 44 (1949). Whatever the merits or demerits of this position, a reexamination of it is, under our customary prac-

**154**

good under the long-standing exception to municipal immunity for this kind of wrong. Although a superficial examination of this contention suggests that the facts alleged appear to fall short of the common law concept of nuisance, we do not deal with the matter definitively in view of the disposition we make of the third issue raised on this appeal.

## I

This third contention, which was the one principally pressed upon us as upon the court below, derives from the familiar learning with respect to the differentiation in functions performed by a municipality. Almost from the very moment of creation by the courts of an immunity initially resting upon the ancient dogma that the king can do no wrong, the judges have been alert to insist that the king be acting as such at the time injury occurs. With kings replaced by city councils as the embodiments of the grace by which men permit themselves to be governed, this alertness was verbalized in somewhat different terms, but the core of the judicial insight remained the same. It is, we believe, essentially this: If a king, or a city council, is to do the job of governing well, then there is something to be said for withholding the threat of answerability in damages for at least some of the actions and decisions which governing necessarily entails. He who rules must make choices among competing courses of action and in the face of conflicting considerations of policy. The capacity and the incentive to govern effectively are arguably not enhanced by the prospect of being sued by those citizens who may be adversely affected by the choice eventually made. Thus it has been thought wise to sweep this restrictive cloud from the horizon and to let those responsible for the conduct of public affairs calculate their courses of action free of this intimidating influence. By the same token, in those areas of governmental action where the reason for

the rule does not apply, the rule itself is disregarded.

This is, in our view, the origin and the present significance of the exception to municipal tort immunity rooted in the contrasting of "governmental" functions, as to which immunity is assumed to obtain, with those said to be of a "proprietary" nature, where it does not. It is not a useful exercise to catalogue the many cases in this and other jurisdictions where the distinction has purported to be drawn. They frequently defy logical classification, and they reflect varying, and often inconsistent, rationalizations, as might be expected in an area where there is a growing conviction that a strict rule of immunity from liability has outlived its time. We do think it significant that, in the traditional formularization of the opposed concepts as "governmental" and "proprietary," there has been an increasing tendency to substitute "ministerial" for "proprietary." This sounds upon our ears as the knell of the old rationale, which was stated in terms of activities customarily associated with government as compared with those ordinarily carried on by the private sector of society. This was, at best, a tangential articulation of the most sensible support to be found for the immunity grant; and the use of the word "ministerial" both eliminates any continuing utility it might have and focuses attention upon a sharper and more satisfying analysis.

That analysis is more concerned with trying to distinguish between the functions performed within an area of readily recognizable governmental responsibility, than with undertaking to define precisely where the boundaries of that area lie. And, with such functions so identified and differentiated, it next inquires whether an injury inflicted as a consequence of one of such functions can be subjected to judicial redress without thereby jeopardizing the quality and efficiency of government itself. "Ministerial" connotes the execution of policy

tice, a matter for the full court and not merely a division. We note that appel-

lants here did not, as they could have done, move for such a hearing.

as distinct from its formulation. This in turn suggests differences in the degree of discretion and judgment involved in the particular governmental act. Where those elements are important, it is desirable that they operate freely and without the inhibiting influence of potential legal liability asserted with the advantage of hindsight. To the extent that the rule of municipal tort immunity continues to serve any useful purpose, this would appear to be that purpose; and its illumination in any given set of facts has been, and is, sought through the function-discriminating exception.

There is nothing new about this approach in this jurisdiction. Indeed, it was clearly reflected in the court's opinion in *Urow, supra.* There the negligence attributed to the District of Columbia was the failure to locate a traffic control device at a particular intersection, resulting, so it was said, in the death of appellant's decedent. The court, in addition to rejecting the invitation to reconsider the doctrine of municipal tort immunity, noted that the D. C. Commissioners had been entrusted with a discretionary authority to locate traffic signals at such places as they might deem advisable. "The establishment of such a general traffic control plan," said the court, "is essentially legislative in character and is the result of the Commissioners' exercise of discretion and judgment." The court went on to hold that a claim of negligence in this context of governmental discretion was wholly inadmissible, whatever view one might take of municipal tort immunity; and it sustained a dismissal of the complaint without trial.

The very last sentence of this court's opinion in *Urow* referred to "a ministerial as distinguished from a discretionary function," presumably reflecting its belief that this is a terminology to be preferred over the traditional governmental-proprietary dichotomy. And the

implication is strong in the opinion that, again without reference, as the court put it, to "[w]hatever defects there may be in the doctrine of municipal immunity from tort liability," such liability might well attach in other—and non-discretionary—circumstances.

A case of such nature is not far to seek in the court's recent history. Judge Prettyman, writing for the court in Booth v. District of Columbia, 100 U.S. App.D.C. 32, 241 F.2d 437 (1956), reversed a directed verdict for the District upon the plaintiff's opening statement and remanded for trial a claim of negligent failure to maintain the streets in safe condition. The fact that two theories of negligence were advanced in that case, and resolved by the court in different ways, serves to cast in clearer outline the distinction between ministerial and discretionary functions. The plaintiff had been injured when her car had been caught in an intersection in a sudden current of flood water. Her first theory of negligence was that the District's culpability lay in failing to plan and provide an adequate sewer system. The court said there could be no recovery on this basis, relying upon Johnston v. District of Columbia, 118 U.S. 19, 6 S.Ct. 923, 30 L.Ed. 75 (1886), where the Supreme Court, noting that the planning and adoption of a sewer system is heavily fraught with discretionary determinations, held the District immune from liability on a similar claim. But Judge Prettyman characterized *Johnston* as also recognizing "that a municipality may be liable for negligence in the construction of a sewer in accordance with the general plan or for negligent failure to keep that sewer in good repair"; and he went on to hold, in respect of plaintiff's second theory of negligence, that "[i]f it can be shown to the satisfaction of the jury that the District negligently failed to keep the streets here involved in a reasonably safe condition, then the District may be liable * * *." [3]

3. In reaching this result, the court rested heavily upon District of Columbia v. Caton, 48 App.D.C. 96 (1918). There the District had formulated a general plan of street railway improvement, but the construction of it had been carried

## II

If we were to make the issue before us turn on a simple conclusion that the provision of schools is properly to be regarded as a legitimate public activity—a "governmental" function in the traditional terminology—then our warrant for doing so would be District of Columbia v. Tyrrell, 41 App.D.C. 463, cert. dismissed, 243 U.S. 1, 37 S.Ct. 361, 61 L. Ed. 557 (1914).[4] This case has been strongly urged upon us by appellee as dispositive, and so perhaps it would be if, in the half-century which has elapsed since it was decided, this court had continued to adhere to the talismanic formula of "governmental" versus "proprietary," signifying the boundaries between what are regarded as characteristically public, as distinct from private, enterprises. But, as we have seen, the court has not done so. It has, instead discriminated among functions, all of which could be said to be "governmental" in this sense. The shift from Tyrrell is signalized by Urow's explicit opposition of "discretionary" to "ministerial" functions, with amenability for negligence depending upon which of these categories encompasses the facts in question. Thus, over and above the differentiating circumstance that Tyrrell did not involve a school child at all, much less one required by the school's program to be in the alleged place of danger, we do not consider that Tyrrell dictates the result here. Under the court's more recent approach, a finding that a function is "governmental" is the beginning of inquiry into the issue of answerability in tort, not the end of it.

In the case before us, the facts alleged in substance are that a guardrail erected by the school authorities to separate a school playground from a depressed areaway adjoining it had its protective purpose and capacity impaired because a section of it became missing; and that, although a dangerous condition was thus created, nothing was done to remedy it, nor were the required recreational activities on the playground suspended until repairs were effected. These are, we repeat, the allegations. They may or may not be established to the satisfaction of a court or jury after trial. The question before us now is not whether they are true, but whether the opportunity should have been given to prove them to be true.

We think it should have been. In so concluding, we accept the proposition that it is the appropriate business, and indeed the urgent responsibility, of the District of Columbia to provide and operate schools and their accompanying playgrounds. We apprehend also that the discharge of that responsibility will frequently involve the performance of functions calling for the highest degrees of discretion and judgment; and it will be time enough, when and if such claims are before us, for this court to deal with the question of the District's liability in tort for harms allegedly flowing from such functions. We think that Urow and its forebears presently provide a considerable degree of guidance in this area to the trial courts, wholly apart from the resolution one way or the other of the abstract issue of municipal tort immunity.

We are not persuaded, however, that the function of repairing broken guardrails imposes upon the District deter-

out in such a way that a dangerous condition was created in the street and permitted to exist without correction. The court said (at p. 107): "The action would not be based upon a defective construction * * * but upon the negligence of the municipal authorities in permitting a dangerous condition to exist in the street, as the result of defective construction." The District has, of course, long been held responsible in tort for its failure to maintain the streets and sidewalks in safe condition. See e. g. Booth v. District of Columbia, supra; Sass v. District of Columbia, 114 U.S. App.D.C. 365, 316 F.2d 366 (1963); District of Columbia v. Woodbury, 136 U.S. 450, 10 S.Ct. 990, 34 L.Ed. 472 (1890); Elliott v. District of Columbia, 82 U.S.App.D.C. 64, 160 F.2d 386 (1947).

4. In its opinion, the Supreme Court pointed out that the discussion of this matter by this court was dictum.

minations of such delicacy and difficulty that its ability to furnish public education will be ponderably impaired by liability for neglect in failing to make such repairs. If "ministerial" is to be given anything like its accepted usage, it surely has patent applicability to these circumstances. If we accept, as this court has, the right of a pedestrian on a public sidewalk to get to the jury on his claim of the District's liability in negligence for permitting a depressed area alongside such sidewalk to exist unguarded (Elliott v. District of Columbia, 82 U.S. App.D.C. 64, 160 F.2d 386 (1947)), we do not see how we can deny the same right on the facts alleged here. From the standpoint of the school child here involved, the school playground was not only a public area which he was privileged to traverse but one in which he was affirmatively required to be at the time of his injury. In the posture which this case has before us, a remand for the purpose of permitting the complaint to be pursued in appropriate proceedings impresses us as well within the scope which this court has already given for the assertion of claims against the District of Columbia sounding in tort.[5]

It is so ordered.

BAZELON, Chief Judge, concurring:

I join in reversing dismissal of the complaint. In emphasizing the factor of discretion as decisive, the court's opinion takes a useful step toward modernizing the archaic doctrine of sovereign immunity. In retaining a rigid classification of cases, however, it harbors seeds of the same arbitrariness which presently characterizes that doctrine. In other areas of tort law, the elaborate categorizations of the common law have gradually been replaced by a single rule—that the existence and extent of the defendant's duty to the plaintiff is to be determined in the context of all the circumstances of the action of which the plaintiff complains.[1] I would decide cases against the sovereign in a like manner, treating the degree of discretion available to Government officials in performance of their office and the public interest in protecting the exercise of that discretion as among the "circumstances of the action" to be considered.[2]

---

5. Knowledge of the defect in the guardrail by the District government does not appear to be alleged in the complaint. This court has consistently held that such notice, either actual or constructive, is an element of the case which must be pleaded and proved. See Aben v. District of Columbia, 95 U.S.App.D.C. 237, 221 F.2d 110 (1955); Dommel v. Managers, Inc., 109 U.S.App.D.C. 370, 288 F.2d 154 (1961); Sass v. District of Columbia, *supra* (by implication); Larmon v. District of Columbia, 5 Mackey [16 D.C.Sup. Ct.] 330 (1886). Appellee did not advance this point in its brief on appeal, nor does it appear to have been urged in support of the motion to dismiss in the District Court. Moreover, in papers filed in opposition to the motion to dismiss, appellants did allege notice. To the extent that the matter is placed in issue on remand, the alternative of amendment of the pleadings, absent a showing of prejudice by appellee, is available. FED.R. CIV.P. 15. On the record before us, no issue has been raised as to compliance with any statutory requirement of notice *after* the injury. See Stone v. District of Columbia, 99 U.S.App.D.C. 32, 237 F.2d 28, cert. denied, 352 U.S. 934, 77 S.Ct. 221, 1 L.Ed.2d 160 (1956).

1. Cf. Daisey v. Colonial Parking, 118 U.S. App.D.C. ——, 331 F.2d 777 (1963), and cases cited therein.

2. Cf. Muskopf v. Corning Hospital District, 55 Cal.2d 211, 11 Cal.Rptr. 89, 359 P.2d 457 (Traynor, J., Cal.Sup.Ct., 1961); Lipman v. Brisbane Elementary School District, 55 Cal.2d 224, 11 Cal. Rptr. 97, 359 P.2d 465 (Gibson, C. J., Cal.Sup.Ct.1961). While the suggestion in *Lipman* corresponding to that made here—that discretion is only one of several factors to be considered (55 Cal.2d at 229, 11 Cal.Rptr. at 99, 359 P.2d at 467)—has since been rejected by the California legislature, Cal.Gov't Code, §§ 815.2, 820.2, the legislature has substituted a solution which reflects its own balancing of the many relevant factors in varying contexts. Cal.Gov't Code, § 810 et seq.; CAL. LAW REVISION COMM'N, RECOMMENDATION RELATING TO SOVEREIGN IMMUNITY 807–34 (1963); CAL. LAW REVISION COMM'N, A STUDY RELATING TO SOVEREIGN IMMUNITY 246– 83 (1963). See also, Jaffe, *Suits Against Governments and Officers: Damage Actions*, 77 HARV.L.REV. 209 (1963); Note, 46 MINN.L.REV. 1143 (1962); Note, 49 CAL.L.REV. 400 (1961).