**DISTRICT OF COLUMBIA, a Municipal Corporation, et al., Appellants,**

v.

**NORTH WASHINGTON NEIGHBORS, INC., et al., Appellees.**

No. 10301.

District of Columbia Court of Appeals.

Argued April 22, 1976.

Decided Dec. 22, 1976.

Rehearing and Rehearing en Banc Denied Mar. 8, 1977.

E. Calvin Golumbic, Asst. Corp. Counsel, Washington, D. C., with whom Louis P. Robbins, Acting Corp. Counsel, Washington, D. C., at the time the brief was filed, and Richard W. Barton, Asst. Corp. Counsel, Washington, D. C., were on the brief, for appellants.

Gilbert Hahn, Jr., Washington, D. C., for appellees.

Before KELLY, KERN and GALLAGHER, Associate Judges.

KERN, Associate Judge:

The District of Columbia appeals from an order (1) permanently enjoining it from enforcement of certain rules and regulations regarding the repair of water pipes by the residents of the District, (2) declaring it liable for the expense, in the future, of repairing such pipes, and (3) directing it to reimburse residents who within three years of the date of filing of the complaint in this case had incurred expense for such repairs. This case was earlier before us in *District of Columbia v. North Washington Neighbors, Inc.*, D.C. App., 336 A.2d 828 (1975), where we reversed the trial court's decision to grant a preliminary injunction on the ground that the plaintiffs had an adequate remedy at law.

The appellees represent (1) a class of plaintiffs whose water pipes have broken in the past and (2) a class of plaintiffs whose pipes may break in the future.

The basic issue in the case is whether the District has the authority to require in-

dividual citizens to bear the cost of repair of the pipes connecting their individual water systems to the District's water mains when they break or whether the District itself must bear that cost, eventually passing it along in the form of higher user rates to all consumers of water within the city.

The trial court's order, entered after an evidentiary hearing, is a detailed document which essentially found that the rules and regulations relied upon by the District did not, by their terms, convey authority to compel repair of the pipes by the individual property owners using them; that, even if those rules and regulations did supply such authority, they were void because they were not promulgated in accordance with the Administrative Procedure Act, D.C.Code 1973, § 1–1501 *et seq.* (hereinafter DCAPA); that, even if the rules and regulations conformed to the DCAPA, they violated the Equal Protection and Due Process clauses of the Constitution because the District itself had on several occasions in the past repaired the pipes of individual property owners when "there is no other way of getting work done" (Record at 173); and that, in any event, the District was liable under a tort theory to the individuals whose pipes had broken because the District itself had proximately caused such breaks by the improper control of traffic on the streets above the pipes and the inadequate construction of the streets and the pipes so as to withstand subsequent wear and tear.

■ For the reasons set forth below, we reverse the order of the trial court and hold that the District of Columbia has authority, under the applicable statutes and regulations, to compel property owners to repair the water pipes which connect their individual water systems to the District's water mains and that the District of Columbia is not liable in tort for breakage or other damage occurring to these pipes.[1]

It is undisputed that the District of Columbia Code places upon individual property owners the sole responsibility for connecting *initially* their own water systems with the *public* water and sewer main by means of underground water pipes, "the work to be done in accordance with the regulations governing plumbing and house drainage." *See* D.C.Code 1973, §§ 6–401 to 6–404. Although these particular provisions of the Code do not specify that the responsibility for *repairs* of the water pipes once they have been constructed and connected to the public water system remain with the property owner, D.C.Pol. Reg. Art. 23, § 5 provides:

> No occupant of premises into which water has been introduced shall permit the same to run or waste unnecessarily from *any water pipe* . . . or, if any water pipe . . . be found leaking, out of repair, or inoperable, and *said occupant, owner* or agent of the premises *shall refuse or neglect to have the necessary repairs made*, after due notification by . . . Water Operations Division . . . the supply may be terminated to said premises until satisfactory repairs or arrangements have been made to prevent such waste or unlawful use; and, in addition, the person so offending shall be liable to the fine provided in these regulations. (Emphasis added.)

This Regulation in our view places on the property owner or occupant who receives water from the city the duty of repairing "any water pipe" so as to avoid water waste and provides the District with two reme-

1. We do not deem it necessary to address at length the constitutional claims raised by the appellees. In our view there are no equal protection or due process issues presented here because there has been no showing of invidious discrimination by the District in favor of some citizens at the expense of others. The record reflects that the action taken by the District of Columbia, pursuant to D.C.Code 1973, § 5–313, in repairing the pipes of a half-dozen property owners who were either unable or unwilling to do so was within the proper scope of its police power to effect in order to preserve the general health and welfare of the community.

dies against one who fails to accept that duty—termination of water service and a fine.

The trial court in its order drew a distinction between the term "water service pipes" (being those which run under public property) and the term "water pipes" (being those which run under private property). The trial court concluded from this distinction that the Police Regulation was intended to apply solely to leaks occurring on private property *only* since the term "water pipes" is used in Section 5 of Article 23. The record reflects (Record at 48–9) that the correct distinction to be drawn is between the water main distributing water throughout the city and the pipe running from the main to the plumbing system inside each structure. Moreover, the Regulation refers to "any water pipe," and we see no reason why the term does not mean exactly that—*any* water pipe running between the main and the individual's plumbing system.

We note that D.C.Pol.Reg. Art. 23, § 5 is not the only expression contained in the regulations of the District of Columbia that the property owner shall himself be responsible for keeping his water pipes in good repair. The Model Plumbing Code, § 105.3, provides that plumbing systems must be maintained in a safe and sanitary condition "by the owner or his authorized agent." We cannot agree with the trial court that this pronouncement applies *only* to buildings constructed subsequent to the effective date of the Model Plumbing Code in 1972. The City Council, adopting the Code, expressly provided that it should govern "the installation, maintenance and repair of *all* plumbing work in the District

of Columbia." Title 5C–2, DCRR No. 72–19 (Appendix A § 1) (emphasis added).

 In addition to these regulations specifically directed to water pipes and plumbing, the District is granted sweeping remedial and enforcement authority in D.C.Code 1973, § 5–313. This section provides:

> *Whenever* the owner of any real property in the District of Columbia *shall fail* or refuse . . . *to correct any condition which exists on or has arisen from such property in violation of law or of any regulation made by authority of law,* . . . the Commissioners of the District of Columbia may, and they are authorized to, cause such condition to be corrected; *assess the cost of correcting such condition* . . . *as a tax against the property* . . . *and collect such tax* . . . . (Emphasis added.)

This statute, read in conjunction with D.C.Pol.Reg. Art. 23, § 5 [2] and provisions of the Model Plumbing Code, confers on the District authority to order property owners to repair leaking water pipes and enforce such authority by fine or by termination of the property owner's water service, or, in the discretion of the Mayor and his representatives, to repair the pipes and assess the cost of such repair against the property served. Although none of the applicable statutes or regulations specify that the property owner must bear the costs of excavation,[3] refilling of excavation, and resurfacing of streets, we think that such result is reasonable because those costs are clearly incidental to the cost of repairing the pipes.

---

2. Appellees question the existence of *any statutory* authorization at all for the promulgation of this particular regulation. However, D.C.Code 1973, § 1–226 authorizes "reasonable and usual police regulations" and D.C. Code 1973, § 43–1503 empowers the city to supply its residents with water and "make all laws and regulations for the proper distribution" of such water.

3. The record reflects (Record at 50) that the District, as a practical matter, bears the burden of the initial excavations since the location of the water leak can only be determined by digging up the street under which the pipe runs to the main.

■ The trial court held that D.C. Pol.Reg. Art. 23, § 5 was invalid because it was not issued in compliance with the terms of the DCAPA which required certain procedures of publication before a regulation was deemed in force and effect. We disagree with this conclusion. The requirement of the DCAPA that regulations *already in existence,* such as the regulation here pertinent, be published was met by the July 27, 1970 Special Edition of the District of Columbia Register, which incorporated the District of Columbia Police Regulations. *D. C. Human Relations Commission v. National Geographic Society,* 154 U.S.App.D.C. 255, 257, 475 F.2d 366, 368 (1973). Furthermore, there is no merit to the appellees' contention that regulations existing prior to the time the power to issue police regulations was transferred from the Commissioner (now Mayor) to the City Council must be reenacted by the Council in order to maintain their validity. Reorganization Plan No. 3 of 1967 merely effected a transfer of the power to make rules and regulations *prospectively.* There is nothing in the Plan to indicate that the extant slate of prior rules and regulations was to be wiped clean, and, in fact, Congress expressly provided that regulations in existence prior to reorganization should retain "the same effect as if the reorganization had not been made." 5 U.S.C. § 907(a).[4]

■■ We must also disagree with the conclusion of the trial court that the letter of July 21, 1971, to Senator McGovern,[5] in which the District outlined its reading of the regulations relevant to repair of water pipes, was in effect "rulemaking" within the meaning of the DCAPA and as such failed to comply with that Act. While the definition of a "rule" under the DCAPA is certainly broad and includes any "statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy," D.C. Code 1973, § 1–1502(6), we do not believe that whenever the District merely *describes* the effect of an existing rule or regulation, as was the case here, it has issued a "statement . . . designed . . . to interpret" within the meaning of the definition of the term "rule." The DCAPA envisioned rulemaking as a quasi-legislative process, and where the government agency performs no legislative function but only describes or refers to the regulation as it is written, the procedural formalities of the APA are unnecessary. Our prior cases, *District of Columbia v. Green,* D.C.App., 310 A.2d 848 (1973), and *Junghans v. Department of Human Resources,* D.C.App., 289 A.2d 17 (1972), are inapposite; they involved changes in existing rules and regulations which were legislative in nature and clearly within the ambit of the rulemaking provisions of the DCAPA.

■ The trial court also found in its order now on appeal that breaks in the water pipes were proximately caused by the negligence of the District of Columbia government and therefore concluded upon

---

4. 5 U.S.C. § 907(a) provides, in relevant part: A statute enacted, and a regulation or other action made, prescribed, issued, granted, or performed in respect of or by an agency or function affected by a reorganization, . . . has, except to the extent rescinded, modified, superceded, or made inapplicable by or under authority of law or by abolition of a function, the same effect as if the reorganization had not been made.

5. The letter provides in pertinent part: Basically, a property owner has a duty to provide at his own expense for the connection of his lot to a water main . . . . Section 105–3 of the 1967 Plumbing Code . . . provides that plumbing systems shall be maintained in a safe and satisfactory condition by the property owner . . . Section 5 of Article 23 of the Police Regulations . . . authorizes the termination of water services to . . . premises where there is water waste until satisfactory repairs . . . have been made . . . of the source of the waste by the occupant, property owner or the authorized agents of the premises.

a theory of tort that the District was responsible to individual property owners for the cost of repair they had incurred.[6] This finding of proximate cause seems to have rested on evidence showing that the District "prescribe[s] the standards for streets and the amount and weight of traffic that flows over them and the stresses to which the streets may be subjected" and that "[t]he original systems and standards of constructions for public streets, mains and water service pipes in the 19th Century and the early part of the 20th Century did not plan for the present day's stresses and strains on street use." The theory urged by appellees, and apparently accepted by the trial court, was that the District was liable in tort to city property owners because it allowed such an excessive flow of traffic over the city streets as to cause the water pipes below the streets and running to individual lots to break under the traffic's weight.[7]

The theory of tort liability adopted by the trial court, viz., that the District's specifications for constructing the city streets and the water pipes were insufficient to withstand the weight of the traffic which now flows over those streets, is in our view not supportable for several reasons.

■ First, the courts have consistently held that notice of the defect alleged, either actual or constructive, is an element of the case which must be pleaded and proved in a tort action against the District. Hackett v. District of Columbia, D.C.App., 264 A.2d 298, 299 (1970); Elgin v. District of Columbia, 119 U.S.App.D.C. 116, 121 n. 5, 337 F.2d 152, 157 n. 5 (1964). We see nothing in the record, and certainly nothing in the trial court's order, to indicate that this requirement was fulfilled here. Likewise, there is nothing in the record to show that the appellees complied with D.C.Code 1973, § 12–309, which states:

An action may not be maintained against the District of Columbia for unliquidated damages to person or property unless, within six months after the injury or damage was sustained, the claimant, his agent, or attorney has given notice in writing to the Board of Commissioners of the District of Columbia of the appropriate time, place, cause, and circumstances of the injury or damage.

■ Finally, we question whether the evidence offered by appellees before the trial court was sufficient to establish that

---

6. Appellees had at the beginning of trial (Record at 48) stated their theory of the case that the city was responsible for any break in a water pipe under public space, viz., the street. At the conclusion of the evidence appellees asserted (Record at 326–28, 331) that they had proved lack of due care on the part of the District and causation of the breaks in the pipes by traffic flow over city streets.

7. The tort theory advanced by appellees raises a substantial question of sovereign immunity. The issue was not briefed or argued by the parties on appeal, but since sovereign immunity is a jurisdictional issue, an appellate court is obliged to consider it, even on its own motion if need be. In the District of Columbia, sovereign immunity survives for "discretionary" but not "ministerial" acts of the government. Wade v. District of Columbia, D.C.App., 310 A.2d 857 (1973) (en banc). This distinction between discretionary

and ministerial functions was influenced by similar distinctions drawn under the Federal Tort Claims Act. See id. at 861. In cases brought under the federal Act, the planning of a highway has been held to be a discretionary function of government and therefore immune from liability. Mahler v. United States, 306 F.2d 713, 723 (3d Cir. 1962); Daniel v. United States, 426 F.2d 281 (5th Cir. 1970). Furthermore, the Supreme Court has indicated that the exercise of discretion which enjoys tort immunity "includes determinations made by executives or administrators in establishing plans, specifications or schedules of operations." Dalehite v. United States, 346 U.S. 15, 35–36, 73 S.Ct. 956, 968, 97 L.Ed. 1427 (1953). We believe that the municipal acts complained of here, which involve the designing of streets and the control of the flow of traffic over them, were discretionary in nature under the standards developed in the above cases.

acts or omissions by the District were the *proximate cause* of the damage to the water pipes. Aside from the fact that the District can only indirectly control the flow of traffic over city streets, the statistics regarding increased flow and weight of traffic which were introduced by appellees do not reflect a direct relationship to pipe breakage that in fact occurred in this case. Indeed, appellees' expert acknowledged (Record at 111) that whether a pipe breaks "is the function of a lot of variables . . . things you can't predict very well." Among these variables (Record at 112–13), were the type of soil surrounding the pipe, the way the trench had been made, where the pipe was laid in the trench, the kind of back-fill in the trench after the laying of the pipe, the quality of the pipe material and pipe joints, and whether the surface of the road above the pipe was uniformly smooth. We could not uphold a finding of proximate cause on the basis of such evidence.

The record in this case reveals—and we are well aware—that the individual property owner who is suddenly called upon to bear the often quite significant cost of repairing his water pipes bears a severe hardship. However, we are unable to conclude that the District *lacks the authority* under the applicable statutes and regulations to impose this burdensome cost upon the property owners or that the District can be held liable in tort for the cost of repair of the pipes. As the trial court conscientiously noted in its order, the repair of the pipes could be more equitably effected by spreading the cost among all the users of water in the city in the form of higher consumer rates. In the final analysis this case reflects the kind of inequitable situation which is suitable for legislative rather than judicial relief.[8]

*Reversed and remanded.*

8. Apparently legislative efforts are now underway to alleviate the financial burden now existing upon individual property owners as the result of the District's present regulations.