Plaintiffs appeal from a judgment by the lower court which dismissed their suit on a trial of the merits. The suit is one for damages filed by the parents of their minor son, Wayne, seven years of age, who met his death by drowning on April 28, 1944, at about the hour of 10:45 A.M., in a natural drainage ditch or canal adjoining the Southwestern boundary of the school grounds of the Hollywood School, which is located in the old Third Ward of the Parish of East Baton Rouge.
This is the second time the subject matter of this suit has been before us. In the first instance, the suit was filed against the defendant without the benefit of any legislative statute authorizing the filing of the suit, and we affirmed a judgment of the lower court, maintaining an exception of no cause or right of action, based on the ground that the School Board was an agency of the State and therefore, was subject to the same immunity as the State itself. See Whitfield et al. v. East Baton Rouge Parish School Board, La. App., 23 So.2d 708. The present suit was filed under authority of Act No. 188 of 1946.
The action is essentially one in tort based on allegations that the defendant School Board was negligent in connection with the death of their minor son in the following respects:
1. In purchasing a school site and erecting a school building thereon for school purposes, bounded on one side by a natural drainage ditch or canal which was a hazardous and attractive nuisance, and in failing to erect a fence, safeguard, or otherwise protect the Southwestern boundary of the school grounds in order to keep the children from going into such natural drainage ditch or canal;
2. that on the day and date of the said accident, the principal of the said school being absent, the teacher assigned to keep *Page 49 
watch over the pupils at play during recess periods, failed to perform her duty, by remaining indoors and indulging in coffee drinking;
3. in the alternative, "that defendant must have known, from surrounding facts sufficient to charge it with constructive notice, that the open natural drainage ditch or canal, with its steep banks, deep and swift running water, offered a dangerous allurement to children in the form of an attractive, unguarded nuisance to such an extent that childish curiosity might entice and lead young pupils incapable of contributory negligence, to play in or near it, and thereby cause personal injuries and possibly the loss of life;"
4. in the further alternative, that if the accident did not result from the accident alleged, then plaintiffs plead the doctrine of res ipsa loquitur.
The defendant interposed exceptions of no right, or cause of action and also a plea of res adjudicata. These exceptions and plea were overruled. The defendant, reserving their rights thereunder, in its answer, made a general denial of the allegations of plaintiffs' petition. In further answer, the defendant alleged in bar of plaintiffs' demand, the plea of contributory negligence of plaintiffs' son, Wayne, in his, the son's violation of the rules and regulations of the said school.
The trial of the case, as stated supra, resulted in a judgment, with written reasons assigned, dismissing plaintiff's suit at their costs. Plaintiffs have appealed.
In this Court defendant urges its exceptions previously overruled by the trial judge. It has abandoned its plea of res adjudicata. At this moment, due to our conclusion we have reached on the merit, it is not necessary for us to discuss the exceptions.
The facts as found by the trial judge are as follows:
"In 1927 the defendant School Board purchased the Hollywood School site which consisted of approximately 7 acres in the Third Ward of this parish, which school site is located five or six blocks east of that part of the industrial area in that part of North Baton Rouge known as the Rubber Plant, and is located in residential section in that area known as Hollywood. The tract is irregular in shape having a width and frontage on the south side of the street of approximately 780 feet, and a width on the rear of 878 feet, a depth on the eastern boundary of 366 feet running north and south along another street, and a depth on the western boundary running along the drainage canal or ditch in a slightly northwesterly direction of approximately 335 feet. While some of the witnesses and the plaintiffs in their petition described this little stream as Monte Sano Bayou, actually this is not the case at all. Monte Sano Bayou is located north and runs at the point where this ditch empties into it in a generally easterly and westerly direction towards the Mississippi River. The Bayou itself is a distinct well defined body of water much larger than this stream and in addition to this one a large number of small streams empty into it from the point of its beginning some miles north of the point where the Hollywood School is located. Most of the witnesses refer to the stream as Monte Sano Bayou or a drainage canal or ditch. It is not a canal at all for such are man made, but a natural little stream which has been straightened somewhat and deepened by man. The southwest corner of the school building is approximately 200 to 250 feet from the point in the drainage ditch where the body of little Wayne Whitfield was found on the morning of April 28, 1944. The Court estimates that the western side of the school building is approximately 140 to 150 feet from the edge of this drainage canal.
"This stream has been deepened and straightened since the unfortunate accident resulting in Wayne Whitfield's death. From the testimony of the witnesses it was not as deep then as it is now and the banks were not so precipitous as they presently are. An examination of the stream now indicates that after you walk westward approximately 140 to 150 feet from the school building you come to the edge of the stream. At first the incline is gradual, dropping 8 or 10 feet over a distance of approximately 60 feet. At this point the bank becomes more *Page 50 
precipitous and goes down another 5 to 7 feet. There is then a muddy bank for a few feet before you get to the water. For its own information, the Court made a rough sketch showing the approximate profile of this stream which is attached hereto.
"On the two occasions which the Court visited the scene there was very little water in the stream, probably 6 to 18 inches deep and about 2 to 4 feet wide. One could easily jump or step across it. Like all natural streams the banks vary from point to point as does the depth of the water. For instance, at a point 100 to 150 feet north of the point of this accident there is a grassy gradual slope from the top of the bank to the stream which you can walk down without difficulty.
"However, the evidence indicates that after a heavy rain as we have often in this semi-tropical climate, that the water does get deep in the canal and rises to approximately 15 feet deep. Furthermore, the Mississippi River backs up into Monte Sano Bayou and when it does it in turn causes the water to back up into this stream and again the water there becomes rather deep. The bottom of the stream to the top of the bank is at least 15 to 20 feet.
"On the day of the accident the water at the point of the accident was clear and tranquil and came up to the waist of a 15 year old boy and the Court estimates it to have been at a depth of 3 to 4 feet.
"This stream is a natural one running through the residential area located south of Hollywood School. The Court approximates that it runs for probably 2 or 3 miles Northward from its point of origin at the South to where it empties into Monte Sano Bayou. The large trees and other landmarks indicate that it has followed its present course for many years, although it has been straightened and deepened by the Parish from time to time. The accident occurred during the early part of morning recess. According to Joseph McMillan, he along with Wayne Whitfield and Leon Miller, another little boy who were in the first grade together, left the school building when morning recess began and walked over to the stream. They walked down near the edge and were talking there when little Wayne slipped on the wet mud and slid into the water. He called his sister and she went to get help. She got two of the teachers who came down with an older boy who waded into the water and pulled Wayne out. The three little boys, according to Joseph, had not played there before and they had not seen any other children playing there. The boys, like all the children of the school, had been told to stay away from the canal and not go beyond a certain land mark, consisting of an oak tree and the janitor's little cottage, which was located some 25 or 30 feet from the edge of the bank of the stream.
"The rules set forth by the principal of the school required that two teachers be assigned to ground duty at recess periods, one on each side of the building. On the morning in question there was an additional teacher on the grounds, on her own volition. She was on the southwest side of the school house and not very far from the point of the accident. However, with three or four hundred children playing on the school grounds it would have been very easy for three little boys to have walked past the teachers and down the banks of the stream without anyone noticing them and this is apparently what happened on the day in question. The boys quickly walked over there and walked down the banks to the edge of the stream and were standing there and talking when little Wayne, due to the slippery banks, slid into the water, and drowned there."
After a careful reading of the record, we fully agree with the trial judge's findings. It is true that some of the dimensions were obtained by the trial judge's visit to the scene of the accident, yet, in order to properly have a description of the situs, we see no reversible error for him to have so visited it and to give us his personal knowledge thereof. No one complains of his actions in the premises nor disputes his findings of such. In fact, he attached a sketch or diagram of the natural drain in question and his sketch is not disputed by either party as not representing the true situation. *Page 51 
The first and third contentions of the plaintiffs are so related one to the other, because unless the natural drainage ditch or canal or creek can be considered as a dangerous, attractive nuisance and one that could be expected to allure and attract children, then defendant would not be negligent in failing to erect a fence or take precautionary measures, we shall consider them together.
All tort actions in this state are bottomed on Civil Code, Article 2315. The word "fault" is the important term in the article. The jurisprudence of this state, under this Article, places a duty on one creating "an inherently dangerous thing" to take suitable steps to safeguard against accidents. The basis of this lies in the fact that the thing is so inherently dangerous that any reasonable person should have recognized or anticipated it and done something to forestall it; or in other words, the foreseeability of harm and at fault in not preventing it.
In our case, the natural drainage ditch, canal or creek was not created by any human being. It belongs to the public; it was open and in plain view. Its source was to the south of the point of accident. Its course is through a residential section of North Baton Rouge; it was under the jurisdiction of the Police Jury for the Parish of East Baton Rouge. The school house had been built and sessions of school had been held therein for more than fifteen years. All the parents of the pupils attending this school were cognizant of this natural drainage ditch, canal or creek forming the Southwestern boundary of the school site and yet no one ever had any apprehension or fear about this stream running by the school ground. The evidence shows that plaintiffs themselves knew of the location of this stream, yet it never occurred to them to make any protest concerning the location of the school grounds and the lack of a fence on the Southwestern boundary of the school grounds. The evidence is further to the effect that as a general rule, there was not a sufficient amount of water in this creek to cause any alarm. There is evidence in the record to show that the natural drainage ditch, canal or creek, instead of being "an inherently dangerous thing," was an accepted part of the scenery. To classify this natural drainage ditch, canal or creek as "an inherently dangerous thing" would be to forbid the planning of amusement parks at or near our many small streams in this state. We do not see any difference in erecting a school building abutting or near a heavy travelled highway in the country or a heavy travelled street of a municipality and the erection of the Hollywood School near this natural drain or creek. No one has ever attempted to classify a heavy travelled highway or street as "an inherently dangerous thing" barring the construction of a school building abutting or near such a highway or street.
Furthermore, this record is replete with testimony that the pupils attending this school were warned against their going beyond a certain rising or hill in the close proximity of the banks of the drainage ditch, canal or creek. School teachers were assigned to patrol the school grounds during recess. Under the facts of this case we are firmly of the opinion that such safeguard, if we consider one was necessary, was ample. In fact, it was sufficient for more than fifteen sessions.
Furthermore, had the school board constructed such a fence as contended for by the plaintiffs and their child had been injured or killed by being pushed, or running into the said fence, we might now have a suit by the plaintiffs contending that the building of the fence was an extra hazard and not needed on the premises. Again, even had it constructed the fence, there is evidence to show that the students, or plaintiffs' child, could have reached the natural drainage ditch, canal or creek by going around the fence. Again, the school board cannot foresee and guard against all the dangers incident to the rashness of children. It is not the insurer of the lives or safety of children. The school board, through the principals and/or the teachers, are expected to take reasonable precautions and care to avoid injury to the students. In this case, ample rules and regulations *Page 52 
were made and formulated for the protection of the students and were properly supervised by two teachers.
We therefore do not find any merit in plaintiffs' first and third contentions.
Passing to the second contention of plaintiffs, that is, that the teachers assigned to keep watch over the children at play during the recess period in question failed to perform their duties by remaining indoors and indulging in the pastime of coffee-drinking, we fail to find any evidence in this record sustaining such contention. To the contrary, we have the uncontradicted testimony of the two teachers assigned to patrol the school grounds on the day of the accident, that they left the school building with their classes and that they did not leave the school grounds during the recess and were on duty when the accident occurred; in fact, one of the teachers was the teacher of the decedent and was present at the time the body was recovered and removed from the waters. There was an additional teacher who by her own volition was on the school grounds.
As to plaintiffs' contention that the doctrine of res ipsa loquitur applies, we fail to see wherein this doctrine has any application. The doctrine is based on the theory that either the defendant has control over the thing causing the accident or is in a better position to know how the accident happened, and plaintiff is without knowledge or has no way of knowing or ascertaining how the accident and resulting damages came about. In this case, defendant was shown not to have control over the drainage ditch, canal or creek, and the way which the accident happened has been fully established.
In their oral argument and brief, plaintiffs point out the fact that defendant, after the accident, constructed a fence near the Southwestern boundary of the school site, thus realizing that the natural drainage ditch, canal or creek was dangerous and something should have been done to keep the children from doing what decedent did. We see no admission of negligence in such act. The member of the School Board from that Ward testified that this fence was built more to allay the fears of one or two parents whose children attended the school rather than a confession or admission that the creek was an inherent, dangerous and attractive nuisance. Furthermore, it is shown that many children, in coming and going from school, pass right along and over this stream. We cannot see any reasons why it was more the duty of the school board to construct a fence on the Southwestern boundary of the school ground than its duty to fence in this stream wherever the children pass by or cross this stream at other places.
The plaintiffs, in oral argument and in brief, cite many cases wherein the doctrine of attractive nuisance was applied, particularly the case of Saxton v. Plum Orchards, Inc.,215 La. 378, 40 So.2d 791, 795. Counsel for plaintiffs lay great stress on the Saxton v. Plum Orchards case, stating that very probably the lower court would have decided this case otherwise had he had the benefit of the Plum Orchards case, the case having been decided by the Supreme Court and reported subsequent to the decision of this case by the lower court. However, the Plum Orchards case makes no radical change in our jurisprudence; it merely applies the long recognized principles to the peculiar facts of the case, and by such application, the Supreme Court determined that the particular pond in question was so dangerous that "a reasonably prudent person", under the circumstances of the case, would and should have taken precautionary measures to safeguard the children of the neighborhood from the obvious danger. We find all the cases cited and relied upon, including the Plum Orchards case, to be inapposite to the case at bar and can be easily differentiated from the present case, for many reasons, particularly on the ground that the "attractive nuisance" in each case was created by the defendants, while in the case at bar, the defendant neither created the ditch, canal or creek nor had anything to do with its presence.
In conclusion, we are of the firm conviction that plaintiffs have failed to prove the inherent hazardous nature of the natural *Page 53 
drainage ditch, canal or creek, and have failed to prove any material allegations or contentions showing any "fault" on the part of the defendant. To the contrary, we find that the defendant has clearly shown that it used due care in selecting the school site and also had sufficient rules and regulations for the safety of the children attending the said school and the patrolling of the school grounds, which rules and regulations were carefully adhered to by both the pupils and the teachers. Furthermore, this being a factual case, we fail to find any manifest error committed by the trial judge.
For these reasons, the judgment appealed from is affirmed.