60 So.2d 718 (1952)
BOURGEOIS et al.
v.
INDEMNITY INS. CO. OF NORTH AMERICA.
No. 19947.
Court of Appeal of Louisiana, Orleans.
October 20, 1952.
*719 Bert W. Clarke, W. W. Thimmesch, Metairie, for plaintiffs and appellees.
Lemle & Kelleher, Harry B. Kelleher, Carl J. Schumacher, Jr., New Orleans, for defendant and appellant.
JANVIER, Judge.
Mrs. Mildred Bourgeois, wife of Glenn M. Bourgeois, while a volunteer worker in the cafeteria of St. Catherine of Sienna School, fell over a bench in the cafeteria and sustained a fracture of her left arm below the elbow and a sprained wrist. She and her husband brought this suit for damages against the Indemnity Insurance Company of North America, the public liability insurance carrier of the said school, she praying for judgment for $1500 for her physical injuries, and Mr. Bourgeois praying for judgment for $194.50, the amount expended by him as head and master of the community for doctors' bills and medical expenses made necessary by Mrs. Bourgeois' injuries. They did not make the school itself a party defendant.
At the outset, it may be well to state that it is conceded that if there is liability, the amount prayed for by each plaintiff is correct.
Plaintiffs allege that the "accident was caused through the actions of students of St. Catherine of Sienna School * * *; that the said students were paying students of the school and that their parents had paid for them a tuition to the school; that it was the duty and obligation of the said school to have proper supervision over the activities of the cafeteria, and that there should have been some teachers or other personnel of the school on duty; that the failure of the said school to properly supervise the conduct of the students in the cafeteria constituted negligence which was the proximate and direct cause of the injuries; that had there been proper supervision in the cafeteria afforded by the school, the teacher or other supervisor should have been able and would have been able to stop the students from placing in her path the bench which constituted a hazard."
Defendant admitted that it had issued a policy of public liability insurance to the school, but denied liability to plaintiffs, and averred that the accident resulted from carelessness and negligence on the part of Mrs. Bourgeois "in not looking where she was walking and in so failing to see the obvious which she should have seen *720 * * *;" and "in failing to act as a reasonable and prudent person would under the same or similar circumstances." And, in the alternative that it should appear that there was any fault on the part of the school for which the defendant would otherwise be liable, defendant especially pleaded the contributory negligence of Mrs. Bourgeois in the particulars above set forth.
There was judgment for each plaintiff in the amount prayed for and defendant has appealed.
There is practically no disagreement over the facts. Mrs. Bourgeois, a member of the Mothers' Club of the school, for about four years had been a volunteer worker in the cafeteria. She and many other mothers of the pupils took turns in assisting in the serving of lunch. None of them received any pay for their services. The cafeteria and all of the volunteer workers were under the supervision of Nuns and paid lay teachers. Mrs. Bourgeois said that her duties required her to "see the lunches are served and to afterwards sort of clear up the cafeteria."
She had carried some soft drink bottles and milk bottles to the end of an aisle and had there deposited them in a case in the corner when the accident occurred. She says:
"* * * It was when I was leaning over placing the bottle down the children apparently moved this bench, and just as I turned around I couldn't see the benchthe bench was directly behind meand naturally I fell over it. I also had a milk bottle in my hand at the time but my hand wasn't cut badly."
She also said:
"It was a path that I had traveled several times and in clearing, putting away the bottles and cleaning the cafeteria. This particular time as I placed the soft drink bottle down and turned aroundwent to turn around with the milk bottle, the bench had been thrown in back of me and naturally I fell over it."
Mrs. Bourgeois says, and there is no contradiction of her statement, that the entire occurrence covered the space of only a second or two. In other words, she had walked down the aisle to the place at which she had deposited the bottles and had immediately turned to retrace her steps and, in that short space of time during which she was placing the bottles in the case, the bench was moved, probably by one or more of the students. It is not contended that the child or children who moved the bench did so with any intention of causing Mrs. Bourgeois to fall. Under these facts, what is the obligation of the school?
Counsel for plaintiffs direct attention to Article 2320 of our Civil Code, LSA-C.C. art. 2320, the second paragraph of which provides that:
"Teachers and artisans are answerable for the damage caused by their scholars or apprentices, while under their superintendence."
Counsel realize that the codal article also provides that:
"In the above cases, responsibility only attaches, when the * * * teachers and artisans, might have prevented the act which caused the damage, and have not done it."
They say, however, that there can be no doubt that the accident could have been prevented had one of the supervisors, a Nun, or a lay teacher (all of whom were at other parts of the cafeteria) been at the spot at the time at which the bench was moved, and that the fact that there was no such person present at that exact spot, at that exact time, was fault on the part of the school and creates liability for what could have been prevented.
In the first place, we have no doubt at all that there can be no liability in such situation unless there is fault on the part of the person whose act results in the damage. Article 2320, and in fact the articles which follow Article 2315, do not create liability without fault. All of those articles are to be read together with Article 2315. This was held in Johnson v. Butterworth, 180 La. 586, 157 So. 121. Assuming for the moment, however, that there was fault on the part of the student or students who moved the bench, there *721 are, nevertheless, other serious legal obstacles in the path of plaintiffs.
We are not at all sure that it was intended by the redactors of our present Civil Code that a "teacher" or a school, as our schools are conducted today, should be held liable for the torts of the pupils, unless, of course, the tort should be committed in the immediate presence of the teacher and under circumstances which would warrant the conclusion that the failure of the teacher to prevent the act was so wanton as to amount almost to a deliberate act on the part of the teacher. Our own view is that the framers of our Code did not contemplate the situation which today exists between our school teachers and their pupils. They contemplated the much closer relationship which then existed between the "tutor" of generations ago and the pupil whose education, and oftimes, whose custody was turned over to the individual "tutor". As a matter of fact, the word used in Article 1384 of the Code Napoleon, on which our present Article 2320 is based, is properly translated not as "teachers" but as "tutors", and we note also from Volume 3, part II of the Louisiana Legal Archives, Compiled Edition of the Civil Codes of Louisiana, that the word "teachers" did not appear in that Article of the Civil Code of 1808, the word there being "institutors."
We think also that some significance should be attached to the fact that even in our present code, the words, "teachers" and "artisans" are placed in the same category, and in the one case the teachers are made liable for the damage caused by their scholars, and in the other the artisans are made liable for the damage done by their apprentices. We can well understand why the artisan should be answerable for the damage done by his apprentice because, to some extent, he assists the artisan in the doing of the work of the trade in which the artisan is engaged. Similarly, the tutor of generations ago was much more closely and more nearly exclusively associated with the student than is the teacher of today.
It is interesting to note that there is omitted from our Civil Code, art. 2318, LSA-C.C. art. 2318, which makes the father, and after his decease, the mother, responsible for the damage caused by the minor child, the proviso, which is found in the case of teachers or artisans in Article 2320, that the responsibility attaches only if the teacher or artisan could have prevented the occurrence of the damage. This omission is noticed in the Butterworth case, and the Court there discussed the effect which, in France, has been given to the proviso as it appears in the Code Napoleon, not only in the case of fathers or mothers, but also as it appears in the case of "tutors and artisans". And the Court found that when the proviso is applicable, it prevents the attaching of responsibility unless the parent, or the tutor, or the artisan was guilty of negligence of his own from which the occurrence may have resulted. The Supreme Court obviously approved the view expressed in France that, except in the case of masters and employers whose liability is based on the doctrine of respondent superior, whenever the proviso which we have discussed is present, there is no liability unless the parent, or the tutor, or the artisan could have prevented the occurrence and failed to do so, or unless the occurrence "was preceded by a fault on his part, without which the event would not have happened, for it is then his personal fault which has occasioned the damage." [180 La. 586, 157 So. 127]
There seems to be no sound reason for providing that, in the modern school of today, school teachers should be liable for the torts of the school children. Our ideas on this subject are bolstered by the further fact that in Article 2320, along with teachers and artisans, are included masters and employers, who are made answerable for the damage caused by their servants and oversers. The responsibility which the framers of the Code recognize, in the case of the master or the employer, results from the application of the doctrine of respondeat superior as has been recognized in many cases, notably Johnson v. Butterworth, supra. There the Court said:
"* * * it was a mistake to include masters or employers in the proviso *722 in the Civil Code of Louisiana, exempting also instructors and artisans, * * * from liability when they could not have prevented the act that caused the damage. * * *"
Surely that doctrine can have no application whatever to the relationship which exists between the modern student and the modern school. We repeat, therefore, our view that the particular article relied upon by plaintiffs does not contemplate the situation which exists between the school which is here involved and the student or students who may have moved the bench in question.
But if we err in this conclusion, nevertheless, we feel that, as a result of the last paragraph of the article, there can be no recovery here by plaintiffs because the record makes it clear that the "teachers" could not have prevented the occurrence.
We conclude then that there is no liability unless it can be said that the fault lay in the fact that there was no supervisorNun or lay teacherin the immediate vicinity of the occurrence. And we cannot so hold. Plaintiffs admit that there elapsed only a second or two between the time at which Mrs. Bourgeois arrived at the end of the aisle to deposit the bottles and the time at which she turned and fell over the bench. Plaintiffs admit that there were several Nuns and lay teachers in the cafeteria, but they complain that none was at that exact spot, at that exact time. Surely that fact did not constitute fault. It cannot be expected that each student must at all times and at all places be under immediate supervision.
And, even had a supervisor been at that end of the room, it is not at all certain that the occurrence could have been prevented. In the short time which elapsed even a supervisor present may not have been able to prevent the sudden movement of a bench only a few feet.
Counsel for plaintiffs, in their contention that the occurrence might have been prevented had there been a teacher at the exact spot at the exact time of the moving of the bench, point to the word "might" which appears in the last paragraph of Article 2320, and they say that this word should be interpreted as meaning "was possible" and that, therefore, if it was possible for a supervisor to have prevented the moving of the bench, the moving "might" have been prevented, and that, since it was not prevented, there is liability.
If this argument should be carried to its logical conclusion, there would also be liability in any one whose act, whether negligent or not, caused damage because it could always be shown that it was possible to have avoided the damage by not doing the act. The fact that it was possible to have prevented the moving of the bench had a teacher been present at that exact spot, does not mean that the fact that no teacher was at that exact spot constituted negligence.
Counsel also with confidence rely upon the fact that, in the Code of 1808, immediately following the proviso, that there is liability only when the act which caused the damage might have been prevented, there follows this statement:
"They are considered to have been able to prevent the delinquency when it was committed through their neglect to watch over the conduct of those for whom they are answerable, or when it was committed in their presence."
Even if that paragraph was present in Article 2320 of our present Code the situation would not be to any extent changed, because we think that there was no negligence in the present instance in watching over the conduct of the pupils.
Of course, there might be liability in a school or in a teacher just as there might be in the proprietor of a store or of a theatre, or any such establishment if it could be shown that a dangerous condition had existed for so long a time as to justify the conclusion that there should have been knowledge in the proprietor of the dangerous condition, or if the proprietor actually had knowledge of the dangerous condition and did not remedy it. But surely there is no liability here on that ground, for, as we have stated, it is conclusively shown that the bench was moved only a *723 second or two before the accident occurred.
We see no liability in the school and none in the defendant.
The judgment appealed from is annulled, avoided and reversed, and the suit of plaintiffs is dismissed at their cost.
Reversed.