BAILES, Judge.
In this tort action the plaintiff, John H. Selleck, sues defendants, Insurance Company of North America and Donald E. Pate, to recover both special and general damages allegedly due as the result of an accident involving his daughter and the son of defendant, Mr. Pate, that occurred on the playgrounds of St. Agnes Elementary School. This is a parochial school owned and operated by the Congregation of St. Agnes Roman Catholic Church.
The plaintiff sues individually to recover the amount of $380 for medical and hospital expenses in the treatment of his minor daughter, Cathryn, and as administrator of her estate to recover $5,000 for physical pain and suffering and mental pain and anguish.
The lower court awarded plaintiff a judgment against Donald E. Pate for $880, being $380 for hospital and medical expenses, and $500 on behalf of the little daughter. Recovery was denied against the Insurance Company of North America on a finding that the school was free of negligence. The amount of recovery against Donald E. Pate was limited to $500 by the trial judge for the avowed reason that the parties agreed by stipulation that Pate was the owner of no immovable property and was unemployed at the time of the trial.
Defendant, Donald E. Pate, took no appeal from the judgment rendered against him, therefore the question of the negligence of his son, Donald Pate, which was the basis of the award against the father under LSA-C.C. Article 2318, is not at issue in this appeal.
Defendant, Insurance Company of North America, is sued as the comprehensive general liability insurer of the Congregation of St. Agnes Roman Catholic Church under a contract of insurance covering the operation of the elementary school attended by both of the children involved in this accident.
On May 13, 1963, plaintiff’s daughter, then nine years of age, while walking on the playground immediately after dismissal of classes for the day, was struck by a bicycle ridden by the minor, Donald Pate, about eleven years of age. Cathryn was knocked to the ground and sustained a fracture of both the tibia and fibula of the left leg
There is no dispute about the facts. From the testimony of the witnesses it appears that the enrollment of St. Agnes Elementary School for the school year 1962-1963 was somewhere between 300 and 350 pupils; that on the date of the accident school had been dismissed for the day and shortly thereafter all but about thirty to forty pupils had left the premises; most of this number were waiting for parents to call for them, and while waiting, some of the children, including Cathryn Selleck, were engaged in playing games and otherwise amusing themselves. Cathryn and others had been playing chase with Cathryn being the one pursued. She had stopped running and was at the time of the accident walking toward the sidewalk on Europe Street. *549 Donald Pate, in the meantime, had secured his bicycle from the rack located along the north wall of the Church and was riding it in the same direction as Cathryn was walking. In other words, he was approaching Cathryn from the rear. As Cathryn turned to her right in walking, young Pate struck her with such force as to knock her to the ground and inflict the above described injuries. Immediately Cathryn was taken to the Our Lady of the Lake hospital where a doctor attended to setting the fractures. A cast was applied and she remained in the hospital for two days.
These children, on the playground, were under the supervision of Sister Mary Theo-phane, a teacher in the school. She testified that she was in a position in the quadrangle of the playground approximately 40 to SO feet north of the bicycle rack when she noticed a number of children running toward Cathryn. That was her first notice that something unusual had occurred.
The physical layout of the premises of the school is such that it is enclosed on three sides with buildings. Only the north side is exposed to the street. This is Europe Street. The school building is located on the east side, the church building on the south, and the convent on the west. All children are required to enter and exit on the Europe Street side.
The published regulation of the school governing the use of bicycles provides:
“Bikes are to be walked in and out of the school yard. Children are never to ride bikes on the school grounds. Please lock your bike.”
The testimony shows that there are two bicycle racks provided for children who ride bicycles to school. One rack is located against the north wall of the church building and the other is situated against the east wall of the same building. The distance from the north wall of the church building to the sidewalk on Europe Street appears to be approximately 166 feet.
The testimony further shows unequivocally that the principal of the school and the playground supervisors have been strict in their enforcement of the rule against riding bicycles on the school grounds. It shows that whenever any child was observed violating this rule, the offender was corrected on the spot. All children and parents had prior notice of this rule quoted supra.
The plaintiffs action, insofar as liability is sought against the insurer, is based on the provisions of LSA-C.C. 2320, which provides :
“Masters and employers are answerable for the damages occasioned by their servants and overseers, in the exercise of the functions in which they are employed.
“Teachers and artisans are answerable for the damage caused by their scholars or apprentices, while under their superintendence.
“In the above cases, responsibility only attaches, when the masters or employers, teachers . and artisans, might have prevented the act which caused the damage, and have not done it.”
In seeking the reversal of the judgment of the trial court absolving the school of liability, the plaintiff assigned, among others, these three specifications of error:
“I. The trial court erred in its failure to find the supervisor, Sister Mary Theophane, negligent in failing to see what she should have seen.
“II. The trial court erred in failing to find that St. Agnes School was negligent in placing the bicycle racks in a position where it could reasonably be foreseen that the accident sued upon would occur.
“III. The trial court in its failure to find the school negligent in failing to have an additional su *550 pervisor on the school grounds during the time the children were leaving the school.”
To paraphrase these alleged errors, it appears that plaintiff contends the school should be held liable for not providing sufficient supervision of the playground; in placing the bicycle rack in a position where it could reasonably be foreseen that an accident would occur; and that Sister Mary Theophane was negligent in failing to see young Donald Pate riding his bicycle on this occasion.
 From the evidence before us we are unable to say that the school was negligent in providing only one supervisor for the overseeing of thirty to forty children. Plaintiff contends that an additional supervisor should have been with the children. The complaint is based on the failure to observe young Donald riding his bicycle. We find no validity or merit in this argument because necessarily the supervisor could not at one and the same time observe all actions of all children in all directions. Neither could such observations have been provided short of a supervisor for each child at large on the playground. We find no basis for finding a causal relationship between the lack of additional playground supervisors and the occurrence of the accident involved herein. Nor under the evidence presented herein is there a basis for holding that the supervisor was negligent merely by reason of the occurrence of the accident. Negligence, in this type case does not attach by inference.
There is no ground for holding that it might reasonably be foreseen that an accident would occur, such as the one here by placing the bicycle racks some 160 feet from the entrance to the playground area. The argument of the plaintiff, apparently, is that the racks for the bicycles should have been placed near the entrance to the playground. It could really make no discernible difference, we believe, where the rack was placed in view of the rule of the school that the bicycle should be walked on and off the premises, coupled with the fact that diligent efforts were made to enforce the rule. The proximate cause of the accident was the negligent operation or riding of the bicycle on the playgrounds by young Donald Pate, not the location of the racks.
We find that the playground supervisor was attending to her duties of overseeing the children when this accident occurred. Again it is appropriate to say that there can be no inference of' negligence merely by a showing of the occurrence of the accident. The only alleged act of negligence is the fact that the supervisor did not actually see young Pate on his bicycle. There is no merit in this contention.
Plaintiff argues that under the provisions of Article 2320, the occurrence of four conditions are required to establish the liability of a school for injuries caused by one of its students. These are:
“(1) Damage caused by a student, while
(2) Under its superintendence, where
(3) The school could have prevented the damage, but
(4) Failed to do so.”
Obviously, the first two conditions are fulfilled and the remaining two conditions have been discussed and passed on supra.
We believe the pivotal point for a holding of liability has not been met in this case. Article 2320, supra, provides “In the above cases, responsibility only attaches, when the * * * teachers * * *, might have prevented the act which caused the damage, and .have not done it.”
No liability can be levied against the school or insurer unless in the normal supervision of the playgrounds and the children thereon, the supervisor was derelict in her duty to observe and oversee the children, and if in the fulfillment of this duty she did in fact observe young Pate riding his bicycle and was in a position to have stop *551 ped him and failed to do so. We find that Sister Mary Theophane was engaged in the normal and ordinary discharge of her duties and that she did not in fact observe young Pate riding his bicycle, and therefore was powerless to prevent the accident and resulting injury to little Cathryn.
Plaintiff argues that Sister Mary Theo-phane was under a duty to observe and that she should be held to have seen that which, by the use of ordinary care and prudence, she should have seen, citing Eubanks v. Wilson (1964), La.App., 162 So.2d 842 and Glass v. Toye Brothers Yellow Cab Company (1964), La.App., 160 So.2d 329.
Neither of the cited cases has any application nor are these cases controlling of the actions of a playground supervisor.
Both of these cases arose out of a motor vehicular accident. In the Glass case, the driver of one of the vehicles that collided with each other approached an open intersection where visibility was unimpaired. The court said a motorist “must see what he can see and in legal contemplation he does see, and his failure to observe what could have been seen by exercising due diligence does not absolve him from negligence.”
In the Eubanks case, a motorist ran into a stalled vehicle on the highway at night. The court held “The law is settled that a motorist is held to have seen an object which, by the use of ordinary care and prudence, he should have seen in time to avoid running into it * *
The duty imposed on the playground supervisor to oversee the playing and other activities of children is quite different from the duty of a motorist to keep a sharp lookout ahead. The playground supervisor cannot be burdened with the duty to see and actively direct the movements of each child at all times. There is no analogy between the duties of a motorist and those of a school playground supervisor.
The case of Bourgeois v. Indemnity Insurance Company of North America (1952), La.App., 60 So.2d 718 and Whitfield v. East Baton Rouge Parish School Board (1949), La.App., 43 So.2d 47, are cited for the statement that “a school is expected-through the principal and teachers, to take reasonable precautions and care to avoid injury to the students, and may be liable where it had knowledge or should have had knowledge of a dangerous condition and did not remedy it.”
The facts of the instant case, as we glean them from the record, do not bring it within the scope of that statement, or the facts of those cited cases.
For the foregoing reasons, the judgment appealed from is affirmed at appellant’s cost
Affirmed.