Ruth E. **BALLARD**, Plaintiff,

v.

Ulysses G. **POLLY** et al., Defendants.

Civ. A. No. 991–73.

United States District Court,
District of Columbia.

Jan. 17, 1975.

Floyd W. Anderson and P. David Gavin, Washington, D. C., for plaintiff.

James C. Gregg, of MacLeay, Lynch, Bernhard & Gregg, Washington, D. C., for defendants Ulysses G. Polly and A. F. Jorss Iron Works, Inc.

C. Francis Murphy, Corp. Counsel, John A. Earnest and Thomas R. Nedrich, Asst. Corp. Counsels, Washington, D. C., for defendant District of Columbia.

MEMORANDUM AND ORDER

YOUNGDAHL, Senior District Judge.

Plaintiff, individually and as administratrix of the estate of her deceased son, brought this survival and wrongful death action to recover damages for the death of her son against Ulysses G. Polly, A. F. Jorss Iron Works, Inc., and the District of Columbia. The action was commenced pursuant to Sections 12–101 and 16–2701, D.C.Code, 1973 Ed. Jurisdiction of the District Court was properly invoked under Section 11–501(4), D.C.Code, 1973 Ed.

It is undisputed that at the time of the accident on June 1, 1972, the defendant Ulysses G. Polly, in the course of his employment, was driving a trailer truck owned by defendant A. F. Jorss Iron Works, Inc. in a westerly direction on Constitution Avenue toward the intersection of Constitution Avenue and 12th Place, N.E., in the District of Columbia. It is also undisputed that on the date of the accident the deceased, an infant 5 years and 10 months of age, was enrolled as a kindergarten student at Maury Elementary School, Tennessee and Constitution Avenues, N.E., in the District of Columbia. Maury is a part of the District of Columbia Public School System, an agency of the defendant District of Columbia. The deceased arrived at school shortly before noon, and proceeded to the school cafeteria for lunch. After lunch, at approximately 12:30 p. m., he was released from the lunchroom to the school playground until class commenced at approximately 1 p. m. A chain link fence surrounded that portion of the playground set aside for children of the age of the deceased (hereinafter the small playground). A portion of the fence along the south side of this small playground had come loose from its supporting poles and was on the ground. It had been down for at least several months prior to June 1, 1972. The small playground was being supervised by a book clerk who, with the principal's knowledge and permission, was substituting for the regular supervisor. Shortly after 12:30 p. m., the de-

ceased child apparently wandered off the playground to the vicinity of Constitution Avenue and 12th Place. While attempting to recross Constitution Avenue in a northerly direction, he ran into the left rear wheel of the truck driven by defendant Polly, receiving injuries from which he died shortly thereafter. Plaintiff claimed that the accident was caused by the negligence of the District of Columbia in not repairing the fence or providing additional supervision of the playground and by the negligence of defendants Polly and Jorss in failing to take adequate steps to avoid the accident.

After the trial had been in progress a brief time, the two defendants, Ulysses G. Polly and A. F. Jorss Iron Works, Inc., settled with the plaintiff for the sum of $3,000.00. The jury had no knowledge of this. With the consent of the remaining defendant District of Columbia, it was agreed that the action should be dismissed against said two defendants with prejudice, and that if plaintiff recovered a verdict against the District of Columbia, the $3,000.00 should be credited against such verdict.

Further, it was agreed that the Court should charge the jury that said two defendants were no longer in the case, that the jury should not speculate as to why they were no longer in the case, and that the fact that said two defendants were no longer in the case was no indication as to how the jury should decide the case as to the remaining defendant.

Pursuant to such agreement the Court charged the jury and the case was dismissed with prejudice with respect to defendants Ulysses G. Polly and A. F. Jorss Iron Works, Inc.

The trial continued against the defendant District of Columbia alone, and a verdict was returned for the plaintiff against said defendant in the sum of $10,000.00 in the wrongful death action and $6,600.00 in the survival action.

No objection was made to the Court's charge to the jury nor were any additional instructions requested by the attorney for defendant District of Colum-

bia. However, the defendant District of Columbia, at the conclusion of plaintiff's case and again at the close of all the evidence made motions for a directed verdict, both of which motions were denied.

Defendant District of Columbia now moves for a judgment notwithstanding the verdict.

I

 It is well established that the District of Columbia has the responsibility to maintain safe playgrounds. Elgin v. District of Columbia, 119 U.S. App.D.C. 116, 120, 337 F.2d 152, 156 (1964) Defendant incorrectly argues that the doctrine of sovereign immunity protects the District from suits involving playground supervision. Repair of fences and the assignment of supervisors are clearly ministerial rather than discretionary acts and do not warrant the protection of sovereign immunity. As the Court stated in *Elgin*:

" 'Ministerial' connotes the execution of policy as distinct from its formulation. . . . . [W]e are not persuaded however, that the function of repairing broken guard rails imposes upon the District determinations of such delicacy and difficulty that its ability to furnish public education will be ponderably impaired by liability for neglect in failing to make such repairs." Elgin v. District of Columbia, *supra* 337 F.2d at 154

Similarly, the formation of policy to provide a safe playground through adequate supervision comes from the Board of Education and is certainly not promulgated by principals of individual schools. By assigning adequate supervisory personnel, just as by maintaining the fences, the principal is merely executing the policy of the Board. Therefore, if the principal executes the policy in a negligent manner, the District of Columbia may be held liable under the doctrine of respondeat superior.

II

██ ██ The more difficult question posed by this case is just how far a school must go to insure the safety of its students during playground activities. Defendant argues that, as a matter of law, schools are not under a duty of care to insure against every rash act of a pupil, such as wandering from a playground into heavy traffic. While there is undoubtedly some point beyond which a school is not required to go, that point has not previously been defined in a case factually similar to this. We must therefore apply the general tort principle that a common law duty of care extends only to the prevention of those injuries which are the reasonably foreseeable results of one's action or inaction. Of course, when children are involved, one must keep in mind that a child lacks a degree of discretion and maturity and that the duty owed him is greater than that owed to an adult. Best v. District of Columbia, 291 U.S. 411, 54 S.Ct. 487, 78 L.Ed. 882 (1933).

Defendant cites Whitfield v. East Baton Rouge Parish School Board, 43 So.2d 47 (La.App., 1949) and Ford v. Riverside City School District, 121 Cal. App.2d 544, 263 P.2d 626 (4th Dist. 1953) in support of its argument. Neither is directly in point.

In the *Whitfield* case, the hazard involved was a drainage ditch adjacent to school grounds which had existed prior to the time the school was built and had never been fenced in. Children had passed the ditch for 15 years without incident. The ditch was therefore not so inherently dangerous as to place a duty on the school to take steps to safeguard against it.

Similarly, in *Ford*, the hazard involved a thorny bush which grew in a remote corner of the playground. The injured child had surreptitiously avoided his supervisors and was injured playing near the bush. The Court concluded that the school had insufficient knowledge or notice of the particular danger-

ous activity to require additional supervision.

■ The present case presents a different situation entirely. Here, Constitution Avenue, a busy thoroughfare, ran immediately adjacent to the school grounds and approximately 120 feet from the playground upon which small children were playing. By his own testimony, the Principal of the school considered Constitution Avenue dangerous enough to conclude that a crossing guard should be placed at the intersection where the accident occurred. Unlike the situations in *Whitfield* and *Ford*, here it was readily foreseeable that small children who were free to wander in the vicinity of Constitution were subject to the risk of being struck by traffic. Therefore, as a matter of law, the school had a duty to protect against this hazard.

The Court emphasizes that in finding such a duty, its decision is based solely on the facts of this case, and in no way implies that a school is an absolute insurer of the safety of its pupils. Careful consideration and weight were given to the proximity of the busy intersection to the school, the existence of the gap in the fence, the length of time the gap had existed, the school authorities' knowledge of the hazard, the number of students on the playground, and the age of the deceased. The absence of any of these conditions might well have produced a different result. Each case must be determined on its own particular facts.

### III

Given the existence of a duty of care, under the facts of this case, the questions of whether that duty was negligently breached, whether such breach was the proximate cause of the deceased's death, and whether the deceased was contributorily negligent are all factual matters properly left to the jury. Rodriguez v. San José Unified School District, 157 Cal.App.2d 842, 322 P.2d 70 (1st Dist. 1958); Beck v. San Francisco Unified School District, 225 Cal.App.2d 503, 37 Cal.Rptr. 471 (1st Dist. 1964); Bar-

stow v. Capital Traction, 29 App.D.C. 362, 373 (1907). The Court may not take these questions from the jury unless the evidence, viewed in a light most favorable to the plaintiff, produces no questions of fact upon which reasonable men and women might differ. Beck v. San Francisco Unified School District, *supra*; United States Electric Lighting Co. v. Sullivan, 22 App.D.C. 115 (1903).

In this case, contrary to the defendant's contentions, there was ample evidence at trial from which the jury might have decided each of these questions for the plaintiff.

### Negligent Supervision

■ Whether or not the school authorities provided proper supervision depends largely upon the particular circumstances involved. Ogando v. Carguinez Grammar School District, 24 Cal. App.2d 567, 75 P.2d 641 (1st Dist. 1938). If no special dangerous condition exists, a school is of course not under a duty to supervise all movements of its students at all times. Woodsmall v. Mt. Diablo United School District, 188 Cal.App.2d 262, 10 Cal.Rptr. 447 (1961); Forgnone v. Salvador U. E. School District, 41 Cal.App.2d 423, 426, 106 P.2d 932, 934 (3rd Dist. 1940); Schuyler v. Board of Education, 18 A.D.2d 406, 239 N.Y.S.2d 269 (1963). To do so would impose extreme administrative and financial burdens. However, where such a condition does exist, and the school has knowledge of its existence, greater supervision is required to insure the safety of the students. Ford v. Riverside City School District, *supra;* Buzzard v. East Lake School District, 34 Cal.App.2d 316, 93 P.2d 233 (3rd Dist. 1939); Lawes v. Board of Education, 16 N.Y.2d 302, 266 N.Y.S.2d 364, 213 N. E.2d 667 (1965); Cioffi v. Board of Education, 27 A.D.2d 826, 278 N.Y.S. 2d 249 (App.Div., 1967); Luna v. Needles Elementary School Dist., 154 Cal.App.2d 803, 316 P.2d 773 (4th Dist. Ct. of App., Cal., 1957). It has been well stated that a school owes it to its

charges to exercise such care of them as a parent of ordinary prudence would observe in comparable circumstances. Hoose v. Drum, 281 N.Y. 54, 22 N.E. 2d 233 (1939).

The evidence adduced at the trial was ample to allow the jury in this case to find that the school had failed to meet its duty of care. A busy thoroughfare, considered dangerous by the school principal, ran adjacent to school grounds and only 120 feet from the small playground. A section of the 4-foot fence, designed in part to prevent small children from leaving the playground, was down. At trial, on direct examination, Mr. Hill, the principal, indicated that the fence in question had been down three or four months. At his deposition, he testified it had been down since 1967 or 1968 and had not been repaired as of the date of the accident. On cross-examination by counsel for the District of Columbia, Mr. Hill testified contrary to his deposition, indicating that since 1967 the janitors had repaired the fence. On redirect, he admitted that even though the janitors had allegedly fixed the fence, he had sent several requests for repairs to the Department of Buildings and Grounds. In addition, he testified that he had no records to show that the District of Columbia had ever responded to these requests. To the contrary, his records showed that the fence had never been repaired prior to the accident. Mr. Hill knew that children went in and out of the playground through the gap in the fence. At the time of the accident approximately 40 to 75 kindergarten through third grade children were on the small playground. The one supervisor on duty was an untrained substitute who, although having supervised classrooms in the past, had never supervised large groups on the playground and was not familiar with the particular students in her charge at the time of the accident.

In spite of what could reasonably be considered a dangerous condition, the school, according to the evidence, took no special precautions. No attempt was made to make temporary repairs to the fence or to erect a temporary barrier. No additional supervisors were assigned to cover the small playground. No special instructions were given to the supervisor present regarding observation of students wandering through the gap in the fence. Supervision was not restricted to the use of regular teachers who were familiar with the students and who might have more readily noticed if any were missing. The small playground was not temporarily shut down until repair of the fence could be accomplished. Having reviewed these facts, it was clearly not unreasonable for the jury to conclude that the school authorities had negligently breached their duty of care.

*Proximate Cause*

Defendant's contention that there was insufficient evidence to establish that negligence on the part of the school proximately caused the accident is also incorrect. As the Court instructed the jury, the proximate cause of an injury is that cause which, in natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury, and without which the result would not have occurred. It is the efficient cause, the one that necessarily sets in operation the factors that accomplish the injury. It may operate directly *or* by putting intervening agencies in motion. The law does not recognize only one proximate cause of an injury, consisting of only one failure, one act, one element or circumstance, or the conduct of only one person. To the contrary, several factors, for example, the acts and omissions of two or more persons may work concurrently as the efficient causes of an injury, and in such a case, each of the participating acts or omissions is regarded in law as a proximate cause. Howard v. Swagert, 82 U.S.App.D.C. 147, 161 F.2d 651 (1947).

Here the evidence showed that the deceased arrived at school, was observed by school officials in the lunch-

room and lined up to go to the small playground, and was observed by his brother Henry in the small playground shortly after 12:30 p. m. The only exits from the small playground were the gate at the southeast corner and the gap in the fence at the southwest corner. The playground supervisor testified that she concentrated her vigil on the gate and saw no one leave by that route. The two students who appeared as witnesses for the defendant both testified that they had left the playground through gaps in the fence. While no one testified that they saw the deceased leave the playground through the gap, there was sufficient circumstantial evidence to conclude that he did wander off in this manner, thus setting in motion the chain of events which led to his death.

Had the accident occurred at a location some distance from the school or some time after the child left the playground, then it might well be argued that the chain of events was broken by intervening causes. But here, the accident occurred 120 feet from the playground, only moments after the deceased wandered from the custody of the playground supervisor.

While it is undisputed that the deceased child ran impulsively into the street, the evidence also shows that the child had never before negotiated traffic by himself. In the past he had always been escorted to and from school by his mother or his 3 eldest siblings, and had never been allowed to play in the street. It was apparent that, at the time of the accident, he became bewildered and frightened and, in an attempt to hurry back to school, had dashed into the traffic. Such conduct was not unusual for a 5-year-old child suddenly alone and confronted for the first time with the task of crossing a busy street. Had it not been for the gap in the fence and the lack of sufficient supervision, the deceased would never have been in the vicinity of Constitution Avenue by himself. The jury was therefore justified in finding that the child's conduct was not an intervening cause of the accident.

### Contributory Negligence

In addition, it cannot be said that deceased's action constituted contributory negligence as a matter of law. "It is well settled doctrine in this jurisdiction that the question of whether a child of tender years has exercised such care as would reasonably be expected from a person of his age and capacity is a question for the jury, and to be determined by the circumstances of the particular case." Barstow v. Capitol Traction, 29 App.D.C. 362, 373 (1907); Washington & G. R. Co. v. Gladmon, 82 U.S. 401, 15 Wall (U.S.) 401, 21 L.Ed. 114 (1872). The burden is on the defendant to prove contributory negligence by a fair preponderance of the evidence.

The jury was properly instructed on these matters, and concluded that the defendant failed to meet its burden. In view of the evidence, as already discussed, such a conclusion was not unreasonable.

### IV

In submitting each of the foregoing questions to the jury, the Court clearly emphasized that the jury was not to be influenced by any feelings of pity, and that, while there is natural sympathy for a mother who has lost a minor child in an accident of this nature, the jury is bound to determine this case in accordance with the rules of law. The Court further instructed that the mere fact that the infant was killed in the accident did not justify an award of damages to the plaintiff. The jury was further instructed that there is no presumption of negligence, but that, to the contrary, the burden is on the plaintiff to prove by a fair preponderance of evidence that there was negligence and that the negligence was the proximate cause of the injury. The Court emphasized that a trial is not a proceeding to see who, by strategic endeavor, seeks to gain the advantage, but rather is a search after the truth.

## CONCLUSION

In summary, the District of Columbia School System had a duty of care to provide a safe playground for the deceased child. The questions of whether, in this instance, that duty was violated, whether such violation was the proximate cause of the accident, or whether the deceased child was contributorily negligent were proper matters of fact for the jury to decide on the evidence before them in this case. The jury was properly cautioned and instructed by the Court before making their decision, and there was ample evidence to support their verdict.

Defendant's motion is therefore denied.