343 So.2d 417 (1977)
Mrs. Eva S. PARTIN, Plaintiff-Appellant,
v.
VERNON PARISH SCHOOL BOARD et al., Defendants-Appellees.
No. 5803.
Court of Appeal of Louisiana, Third Circuit.
March 4, 1977.
*418 Pharis & Pharis by James A. Pharis, Jr., Alexandria, for plaintiff-appellant-appellee.
Gist, Methvin & Trimble, H. B. Gist, Jr., Alexandria, for third party defendants-appellees-appellants.
Bolen, Halcomb, Bolton & Erwin by Frank R. Bolton, Jr., Alexandria, Tillman & *419 Mitchell by F. Clay Tillman, Leesville, for defendants-appellees.
Before WATSON, GUIDRY and FORET, JJ.
GUIDRY, Judge.
This is a personal injury action instituted by plaintiff wherein she seeks to recover, on her own behalf and on behalf of her minor son, Paul Corcoran Wagner II, hereafter referred to as Paul, damages sustained when Paul allegedly fell on the playground at Simpson Public School in Simpson, Louisiana. Suit was initially brought against the Vernon Parish School Board, however, by supplemental petition plaintiff also joined two teachers, Mrs. Betty J. Gordy and Miss Diana D. Hillman; the latter's insurer, Horace Mann Insurance Company; and, Royal Globe Insurance Company, insurer of the school board. The school board and its insurer filed a third party demand seeking indemnity over against Gordy, Hillman and the latter's insurer. Miss Diana Hillman and her insurer likewise filed a third party demand seeking indemnity and/or contribution from the school board and its insurer. Thereafter the defendants, Gordy and Hillman filed exceptions of no cause and no right of action to the demands of plaintiff and third party plaintiffs which exceptions were referred to the merits.
The matter was tried and pursuant to written reasons assigned plaintiff's demands were rejected and accordingly her suit and all third party demands were ordered dismissed with prejudice. Plaintiff appealed. Third party plaintiffs appealed solely to preserve their rights under their respective third party demands in the event the trial court judgment is reversed.
Plaintiff contends that Paul sustained a transverse laceration in the head and body region of the pancreas when he either fell upon, was pushed on or tried balancing on a small tree stump located on the playground at the Simpson Public School. Plaintiff contends that the two teachers were guilty of actionable negligence because they failed in their duty to properly supervise the children and that the school board is liable under the doctrine of respondeat superior. Plaintiff additionally contends that the school board is guilty of independent negligence for having allowed a dangerous condition, i.e., a pine tree stump, to exist on the school playground.
The facts leading up to and surrounding the alleged accident are not in dispute except in two particulars, i.e., how Paul's body came into contact with the tree stump and whether the stump was relatively square and rounded on top or whether it was jagged and knife-like.
The accident happened at about 11:30 a. m. on the morning of September 9, 1974. The previous day, which was a Sunday, Simpson was hit by the fringe winds of a hurricane as a result of which a small dead pine tree located on the very edge of the school playground fell. The tree was described by all witnesses as being about six to ten inches in diameter. Mr. Willard Martin, the school janitor, arrived at the school on the day of the accident at about 7:00 a.m. Upon his arrival be noticed the fallen tree, which was lying partially in the road. He immediately removed the tree and large branches and generally cleaned up the area except for small branches, pine cones, etc. He did not remove the stump which was described by him as about twenty to twenty-four inches in height and almost square and rounded on top. Mr. Martin testified that he did not consider the stump as hazardous and did not report its presence to anyone.
According to the school schedule the first, second and third graders were allowed a noon recess which began about 11:20 a.m. The children, about ninety in number, were taken to the playground under the supervision of Mrs. Gordy, who was the teacher on duty. The playground was described by all witnesses as being about the size of a football field. Upon arrival at the playground Mrs. Gordy immediately saw the stump and the scattered debris, i.e., small branches, twigs, and pine cones, around it and cautioned the children as a group that they should not play there. Mrs. Gordy testified *420 that she was not concerned about the stump, her description thereof being generally in agreement with that of Mr. Martin, however, she was concerned that the children might injure one another if they undertook to throw small twigs, pine cones, etc. Mrs. Gordy stationed herself about 30 or 40 feet away from the stump in the area of the see-saws and remained there during the entire recess. Following Mrs. Gordy's general warning to the group as a whole, she noticed Paul, who was then 7 years old, in the vicinity of the stump and she again warned him that he should play elsewhere. Following this second warning Paul returned to the area and either fell on, was pushed, on, or layed his body over the stump. Mrs. Gordy was sitting near the see-saws, and while taking a rock out of her shoe, looked up and saw Paul on the stump with his hands and feet in the air. Mrs. Gordy assumed that Paul was trying to balance his body on the stump. Upon seeing this Mrs. Gordy immediately went to Paul and again scolded him for disobeying her. At this point we note that only Mrs. Gordy saw Paul on the stump, however, she did not see whether he fell on, was pushed on, or simply laid his body over the stump. The history given to Dr. Edgerton, Paul's treating physician, was to the effect that a little boy pushed Paul and he fell across the stump. Paul testified that he was attempting to climb up on the stump when his foot slipped and he fell. The trial judge did not resolve this controversial fact concluding that regardless of the manner in which Paul's body came into contact with the stump the defendants were not negligent.
Apparently, shortly after the last described incident, Miss Diana Hillman, who was a friend of Mrs. Gordy, went to the playground either to deliver a message or to simply visit with Mrs. Gordy. When she arrived Mrs. Gordy was standing by the see-saws. Miss Hillman testified that upon her arrival on the scene she noticed the stump and the debris surrounding it. Miss Hillman's description of the stump coincided with that of Mr. Martin and Mrs. Gordy. She stated that Mrs. Gordy told her of her warning to the children and to Paul in particular that they should not play in the area of the stump. Both Miss Hillman and Mrs. Gordy testified that after the former had been there for about two or three minutes Paul approached them, in no particular distress, to show them his stomach which was slightly bruised and scratched. Neither considered the injury displayed to them to be serious or to require any attention. At this point we digress to note that the record clearly establishes that Miss Hillman was not on duty during this particular recess and was under no obligation to supervise or help supervise the children on the playground. She testified, without contradiction, that she did not see Paul or any of the other children around the stump. The only time she actually saw Paul was when he came to the see-saws to show her his stomach.
During the afternoon Paul became sick, however, Miss Hillman concluded that he had a virus which was then going around. Upon his arrival home from school Paul became quite ill and he was then taken to the family doctor in Leesville who immediately referred him to Dr. Edgerton. Dr. Edgerton performed surgery on Paul that evening and determined that Paul was suffering from a lacerated pancreas.
On the following morning Mr. Douglas Williamson, assistant principal, was advised of Paul's injury whereupon he dispatched one of the senior students at Simpson, John Nelson, to remove the stump. John, using an axe, cut the stump down and simply threw it down in the area. John Nelson's description of the stump was similar to that of Mr. Martin, Miss Hillman and Mrs. Gordy. Some seventeen days later counsel for plaintiff called at the school seeking to find the stump. Mr. Williamson went to the area and retrieved a piece of pine wood which he found in the area and turned it over to plaintiff's counsel. This piece of wood was introduced in evidence as plaintiff's exhibit 8. The trial court described the exhibit as being a jagged piece of wood with a knife-like appearance.
As noted at the outset the evidence is conflicting as to the appearance of the *421 stump on September 9, 1974. There is nothing in the record which would confirm that this piece of wood (exhibit P-8) was the stump which was cut down by John Nelson. Mr. Williamson testified that he had never seen the stump before or after it was cut down. He retrieved this piece of wood for plaintiff's counsel because it was found lying in the area seventeen days postaccident. The exhibit does not conform with the description of the stump as testified to by Mr. Martin, Miss Hillman, Mrs. Gordy and John Nelson. Paul's stepfather who viewed the stump in semi-darkness during the early morning hours on September 10th testified that the exhibit did not appear to resemble the stump he had seen standing. He stated:
"Well there seemed to be a little bit more up on it coming up in through there on the bridge part and through here maybe. I don't believe it was quite that far down but its like I said it was late at night when I looked at it I just more or less glanced to see the stump and it was there and I looked at it . . ."
In addition to the above the fact that Paul's injury was not one which caused a penetration of the abdomen but rather simply a bruise corroborates the fact that the stump was not sharp and jagged. The trial court reached the following conclusion on this material issue of fact:
". . . the Court is of the opinion that the preponderance of the evidence is that the stump, at the time of the alleged injury, was not jagged, but was more rounded and smooth across the top. The piece of wood introduced at the trial may have been some of the actual stump, but it was not the actual appearance of the stump at the time of the accident . . .
. . . This Court just cannot believe that the stump was this long and jagged, and the testimony of the people who actually saw the stump on September 7 (sic), 1974 enforces and preponderates this view . . .
This Court believes that at the time of this accident the appearance of the stump was rather rounded and more smooth than jagged. The evidence is to this effect. . ."
It is well settled that where there is evidence before the trier of fact which, upon its reasonable evaluation as to credibility, furnishes a reasonable basis for the trial court's finding same should not be disturbed in the absence of manifest error. Canter v. Koehring Company, 283 So.2d 716 (La. 1973). We find no manifest error in this factual conclusion of the trial court.
On the basis of the above facts the trial court rejected plaintiff's demands. Plaintiff contends on appeal that the trial court erred in (1) failing to find actionable negligence on the part of Mrs. Gordy; and, (2) in failing to find negligence on the part of the school board for permitting a hazardous and dangerous condition to exist in the playground area of the Simpson school.
We observe that plaintiff has apparently abandoned any claim against Miss Hillman and her insurer, Horace Mann Insurance Company, for no mention is made of Miss Hillman in her appellate brief. In spite of this, since the school board and its insurer did file a third party demand against Miss Hillman and argue on appeal that if the trial court judgment is reversed the board is entitled to indemnity over against Miss Hillman, we feel that the question of Miss Hillman's liability or non-liability should be set at rest. We conclude that the trial court correctly determined that Miss Hillman was not guilty of any negligence and we are pleased to adopt as our own the trial court's reasons in this regard. The trial judge stated:
"There has been no showing that Miss Hillman breached any duty she may have owed to the injured child. She was not `on duty' nor did she see the child playing on or around the stump. She did not have actual or constructive knowledge of the child's actions. Even if someone were negligent, to hold Miss Hillman liable for something she had no knowledge of, or duty towards, would be preposterous. To hold her liable would imply that *422 every teacher in the school could also be responsible. . . ."
We likewise find, as did the trial court, that Mrs. Gordy was not guilty of any negligence. There is nothing in the record which would even suggest that Mrs. Gordy was in any way remiss in her duty to supervise the many children under her care at this noon recess. It will be remembered that Mrs. Gordy was supervising the play of some 90 youngsters in an area the size of a football field. She cautioned the children as a group that they should not play in the area of the stump. She again cautioned Paul, himself, that he should play elsewhere. Mrs. Gordy had no reason to know or believe that Paul would not comply with her instructions. Even if Mrs. Gordy had seen Paul when he approached the stump for the second time there is no showing that from her position near the see-saws she could have prevented Paul's contact with the tree stump. As we stated in Nash v. Rapides Parish School Board, 188 So.2d 508 (La.App. 3rd Cir. 1966):
"As is often the case, accidents such as this, involving school children at play, happen so quickly that unless there was direct supervision of every child (which we recognize as being impossible), the accident can be said to be almost impossible to prevent."
We recognize that a school teacher charged with the duty of supervising the play of children must exercise a high degree of care toward the children, however, the teacher is not the absolute insurer of the safety of the children she supervises. Our law requires that the supervision be reasonable and commensurate with the age of the children and the attendant circumstances. There is no requirement that the supervisor, especially where the play of some ninety children is being monitored, have each child under constant and unremitting scrutiny. Nash v. Rapides Parish School Board, supra; Comeaux v. Commercial Union Insurance Company, 269 So.2d 500 (La.App. 4th Cir. 1972); Bourgeois v. Indemnity Insurance Company of North America, 60 So.2d 718 (La.App. Orleans 1952); Selleck v. Insurance Company of North America, 182 So.2d 547 (La.App. 1st Cir. 1966). Suffice it to say that we find no negligence on the part of Mrs. Gordy.
We turn finally to plaintiff's contention that the school board permitted a hazardous and/or dangerous condition to exist on the school premises and is therefore guilty of negligence. We likewise find this contention to be without merit.
The trial court found that the stump in question did not constitute a hazardous or dangerous condition. In this connection the trial judge stated:
"A stump in itself is not of a hazardous or dangerous nature to warrant the concern which plaintiff would have the court believe. Neither Mrs. Gordy nor the School Board are unconditional insurers of the children . . .
In a rural area such as Simpson, trees are predominant. Trees and their components are nearly everywhere. As such, children are going to play in and around them. In doing so, this doesn't cause parents much concern. We then, as parents, should not expect more of others than we do of ourselves. We cannot insulate our children from all risks which they may or may not encounter."
We agree with this conclusion of the trial judge. As aforestated the stump in question was found to be an ordinary stump, squared off on top with no jagged or knifelike protrusions. It was twenty to twentyfour inches in height and from eight to ten inches in diameter. It presented no more of a hazard than would a trash barrel, a bench, a water fountain, or any other of the many objects which are normally and usually found on school playgrounds. As stated in Whitfield v. East Baton Rouge Parish School Board, 43 So.2d 47 (La.App. 1st Cir. 1949):
". . . the school board cannot foresee and guard against all the dangers incident to the rashness of children. It is not the insurer of the lives or safety of children."
For the above and foregoing reasons the judgment of the trial court is affirmed, all *423 costs of this appeal to be borne by plaintiffappellant.
AFFIRMED.